**CROSBY & FOX, LLC**
David Crosby, Esq.
Nevada Bar No.  3499
Troy Fox
Nevada Bar No. 11127
710 S. Eighth St.
Las Vegas, NV 89101
(702) 382-1007
info@crosby-fox.com

Crosby & Fox, LLC
710 S. 8ᵗʰ St., Las Vegas, NV 89101
Ph. (702) 382-1007 Fax (702) 382-1921

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

Sherry Kaye Rahman,

Debtor.

Case No.: 18-12443-MKN

CH: 13

Trustee: Rick Yarnall

Sherry Kaye Rahman, as an individual and the Managing Member of the former entity PAKUS LLC,

Plaintiff,

v.

Romik Yeghnazary, an individual, TB Holdings, LLC,

Defendants.

Adversary No: _____

## ADVERSARY COMPLAINT FOR RESCISSION OF CONTRACT, REFORMATION OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS, AND FOR DECLARATORY RELIEF

COMES NOW, Debtor, Sherry Kayne Rahman, as an individual and as the managing member of the former entity, PAKUS. LLC, by and through her attorney of record, Troy Fox of Crosby fox, and alleges and complains as follows:

### I.   JURISDICTION AND VENUE

1.  The Plaintiff, is an individual, over the age of twenty-one, and is and was at all times relevant herein, a resident of Clark County, Nevada, owning and residing in real property in Clark County, Nevada.

-1-

2.  Defendant, Romik Yeghnazary is believed to be a resident of Nevada. Additionally, Mr. Yeghnazary has claimed to have an interest in real property here in Nevada and has appeared in the Debtor's underlying bankruptcy case.

3.  The property in question is commonly known as 3984 Royal Viking Way, Las Vegas, NV 89121, APN # 162-13-415-008 and more specifically described as: "LOT 8 OF ROYAL VIKING ESTATE, AS SHOWN BY MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDED OF CLARK COUNTY, NEVADA IN BOOK 25 PAGE 86" (Subject Property.)

4.  PAKUS LLC was a Nevada LLC which officially terminated as an entity on or about October 14, 2016. (See **Exhibit "1"**)

5.  TB Holding LLC, appears to be an active LLC registered in Nevada (See **Exhibit "2"**) which is either the agent of, or the alter ego of Defendant Romik Yeghnazary.

6.  TB holding has attempted to collect the alleged debt on behalf of Romik Yeghnazary (see **Exhibit "3"**).

7.  Jurisdiction is proper in this Court pursuant to 11 U.S.C. §1334(b) and local rule 1001(b)(1).

8.  Venue is property in the Bankruptcy Court, District of Nevada, in accordance with 28 U.S.C. §1408 and §1409(a).

9.  Pursuant to Local Rule 7008 Plaintiffs DO consent to the entry of final orders or judgement by the bankruptcy judge.

## II.  FACTS

10. Plaintiff, is currently the title owner of the Subject Property.

11. The Subject Property has various liens including a First Mortgage held by Selene Finance, a Judgement Lien by the Pentecostal Church of God, a Lien by the Las Vegas Valley Water District, and a lien by Republic Services, both of the latter liens being statutory liens.

12. The property also has a recorded lien by Defendant which is the subject of this dispute.

Crosby & Fox, LLC
710 S. 8th St., Las Vegas, NV 89101
Ph.(702)382-1007 Fax(702)382-1921

Crosby & Fox, LLC
710 S. 8th St., Las Vegas, NV 89101
Ph: (702) 382-1007 Fax (702) 382-1921

1   13. On or about December 28 2016, the Plaintiff was conned into signing an

2   agreement between herself as the managing member of PAKUS LLC and Defendant,

3   Romik Yeghnazary, that was not at all consistent with what she was being told she was

4   signing. She was not represented at the time by counsel and was not given the

5   opportunity to consult with an attorney regarding the alleged loan agreement.

6   14. The agreement between the Defendant and the Plaintiff was that Defendant, who

7   had access to hard money lenders, was going to get a loan on behalf of the Plaintiff,

8   which was going to be sufficient to pay off the first mortgage, the amount owed to

9   Defendant, any other liens, and provided money to try to settle the Judgment held by

10   Pentecostal Church of God.

11   15. Defendant indicated that the property had to be put into the LLC so that his hard

12   money loan connections would finance the loan.

13   16.  The Defendant then prepared documents which were very different from the

14   agreement which had been discussed, indicating that it was only to ensure that the

15   money he had lent to Plaintiff's husband would be protected and saying that if Plaintiff

16   didn't sign the agreement, she would lose everything.

17   17. The Plaintiff is and was at the time of the agreement, suffering from progressively

18   worsening Dementia, which makes it difficult for her to understand complicated financial

19   matters.  This is further exacerbated by being under extreme stress.

20   18. At the time of signing the agreement, the Plaintiff was involved in a civil law suit

21   regarding an agreement her Husband had become involved with, and her husband was

22   under investigations by the Department of Justice for criminal issues.

23   19. The Plaintiff signed an Agreement (attached hereto as **Exhibit "4"** and

24   hereinafter "Agreement") which Defendant represented to Plaintiff was going to let him

25   get a hard money loan that would allow Plaintiff to pay off the liens on the property, pay

26   the Defendant, and hopefully resolve her other debt issues.

27   20. No one discussed with Plaintiff that the loan was going to be due within 6 months;

28   no one explained the difference between an unsecured and secured loan; no one

explained the 25% compounding interest which would attach to the loan after the 6

1 months was up or how that amount of interest would impact what she owed. Plaintiff was
2 told she signing paperwork necessary to help her pay off her debts.

3     21. The alleged agreement has, in approximately 18 months, turned an unsecured
4 debt in the amount of $17,500 allegedly owed by the Plaintiff's husband for other matters,
5 into a secured debt of now over $700,000, allegedly secured by the Debtor's principal
6 and only residence.

7     22. The agreement was allegedly entered into in approximately December of 2016
8 between PAKUS, LLC and Defendant, even through at that time, PAKUS, LLC was a
9 terminated entity and was not doing business.

10     23. The Quit Claim deed allegedly transferring the property from Plaintiff to PAKUS,
11 LLC was signed on October 26, 2016, even through PAKUS, LLC was terminated on
12 October 14, 2016.

13     24. The truth is, the property was put into the name of PAKUS, LLC by the Plaintiff
14 per the requirement of the Defendant, who wanted to ensure the interest in the property
15 he was trying to take from the Plaintiff, was going to be protected from the Plaintiff's other
16 creditors, although the Defendant did not indicate that was the reason to the Plaintiff.
17 Instead, the Defendant said the transfer had to be to the LLC because his hard money
18 connections wanted the property in the name of the LLC before they would provide
19 financing.

20 **II. Causes of Action**

21 **1. Rescission of Contract**

22     25. Plaintiff repeats and realleges each and every allegation in the above paragraphs
23 as if fully set forth herein.

24     26. The Plaintiff was induced to sign the agreement by the promise of the Defendant
25 that she would be able to obtain a hard money loan if she sighed the Agreement
26 presented by Defendant.

27     27. Plaintiff was suffering from Dementia at the time she signed the agreement.

28

Crosby & Fox, LLC
710 S. 8th St., Las Vegas, NV 89101
Ph. (702) 382-1007 Fax (702) 382-1921

28. The Plaintiff signed the agreement on behalf of an entity which had been terminated and was not able to do business in Nevada prior to entering into the agreement.

29. The Plaintiff was not given an opportunity to consult with an attorney or seek legal advice regarding this agreement prior to signing it.  Nor were the actual terms of the agreement explained to her accurately.

30. The Agreement has turned a $17,500 unsecured debt into a $700,000 secured debt against the Plaintiff's home in approximately 18 months, which is unconscionable.

31. Any or all of the above facts provide sufficient grounds for the Court to find rescission of this contract to be appropriate.

32. Plaintiff has been required to obtain an attorney to prosecute this matter and is entitled to an award of attorney's fees and costs incurred in bringing this suit.

## 2.  Reformation of Contract

33. Plaintiff repeats and realleges each and every allegation in the above paragraphs as if fully set forth herein.

34. The Plaintiff was induced to sign the agreement by the promise of the Defendant that she would be able to obtain a hard money loan if she sighed the Agreement presented by Defendant.

35. Plaintiff was suffering from Dementia at the time she signed the agreement.

36. The Plaintiff signed the agreement on behalf of an entity which had been terminated and was not able to do business in Nevada prior to entering into the agreement.

37. The Plaintiff was not given an opportunity to consult with an attorney or seek legal advice regarding this agreement prior to signing it.  Nor were the actual terms of the agreement explained to her accurately.

38. The Agreement has turned a $17,500 unsecured debt into a $700,000 secured debt against the Plaintiff's home in approximately 18 months, which is unconscionable.

Crosby & Fox, LLC
710 S. 8th St., Las Vegas, NV 89101
Ph. (702) 382-1007 Fax (702) 382-1921

39. Any or all of the above facts provide sufficient grounds for the Court to find reformation of this contract to be appropriate and the Court should reform the contract into terms reasonable to both parties.

40. The Plaintiff has been required to obtain an attorney to prosecute this matter and is entitled to an award of attorney's fees and costs incurred in bringing this suit.

### 3.  Breach of Covenant of Good Faith and Fair Dealings

41. Plaintiff repeats and realleges each and every allegation in the above paragraphs as if fully set forth herein.

42. There is a Covenant of Good Faith and Fair Dealings which attached to every contract in Nevada.

43. The Plaintiff relied on the Defendant's representations that he was going to assist her in obtaining a hard money loan when she entered into and signed the Agreement.

44. The Defendant knew or should have known of the Plaintiffs vulnerable mental state at the time he induced her to sign the agreement.

45.  The Defendant knew or should have known that the entity PAKUS, LLC was not a functioning business at the time the Agreement was signed, and as such, had no authority or power to enter into a contractual Agreement.

46. The Defendant took advantage of Plaintiffs reliance on his representations, and his entrusted position to induce the Plaintiff to sign an agreement which turned a $17,500 unsecured debt owed by the Plaintiff's spouse into a $700,000 secured debt in approximately 18 months.

47. The Defendant has breached the covenant of good faith and fair dealings, and the Court to provide an appropriate remedy including canceling the contract and associated lien between the parties and appropriate monetary damages to be determined by the Court.

48. The Plaintiff has been required to obtain an attorney to prosecute this matter and is entitle dot an award of attorney's fees and costs incurred in bringing this suit.

Crosby & Fox, LLC
710 S. 8th St. Las Vegas, NV 89101
Ph. (702) 382-1007 Fax (702) 382-1921

1

### 4. Declaratory Judgment

2  49. Plaintiff repeats and realleges each and every allegation in the above paragraphs

3  as if fully set forth herein.

4  50. There is a real and acetal dispute between the parties as to their respective

5  interest in the Subject Property.

6  51. Defendant wrongfully acquired a lien against the property through an Agreement

7  which should not, in good conscious, be enforced.

8  52. The Plaintiff claims an interest in the Subject Property, free and clear of any

9  interest alleged by the Defendant.

10  53. Plaintiff requests a judicial determination that Plaintiff owns the title to the subject

11  property free and clear of any claim or lien allegedly held by the Defendant.

12  54. The Plaintiff has been required to obtain an attorney to prosecute this matter and

13  is entitle dot an award of attorney's fees and costs incurred in bringing this suit.

14

15  **WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

16      1. That the Court rescind the Agreement between the Plaintiff and the Defendant,

17         including any alleged lien or security interest obtained by the Defendant as a

18         result of that agreement;

19      2. In the alternative, that the court reform the agreement to terms which are

20         reasonable in light of circumstances;

21      3. For an appropriate remedy including cancelling the contract, and monetary

22         damages to the Plaintiff for Defendant's breach of the covenant of good faith

23         and fair dealings;

24      4. For a declaration from the Court regarding the interest of the parties in the

25         Subject property;

26      5. For attorney's fees and costs incurred in prosecuting this matter; and

27

28

Crosby & Fox, LLC
710 S. 8th St., Las Vegas, NV 89101
Ph: (702) 382-1007 Fax (702) 382-1921

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Crosby & Fox, LLC
710 S. 8th St. Las Vegas, NV 89101
Ph. (702) 382-1007 Fax (702) 382-1921

6. For such other and further relief, in law or in equity, which the court may find appropriate or to which the Court may determine the Plaintiff is entitled.

Dated this 11th day of July, 2018.

**Crosby & Fox, LLC**

/s/ Troy S. Fox
Troy S. Fox
Nevada Bar No. 11127
Attorney For Debtor

# EXHIBIT 1

7/10/2018                                 Entity Details - Secretary of State, Nevada
                                                                          Home | Forms | Announcements | FAQ | Contact Us

# NEVADA SECRETARY OF STATE
## Barbara K. Cegavske

Search nvsos.gov...                    GO

SOS INFORMATION | ELECTIONS | BUSINESSES | LICENSING | INVESTOR INFORMATION | ONLINE SERVICES

My Data Reports   Commercial Recordings   Licensing

# PAKUS L.L.C.

🔍 New Search                    Manage this Business    $ Calculate Fees    🖨 Printer Friendly

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Terminated | File Date: | 10/14/2016 |
| Type: | Domestic Limited-Liability Company | Entity Number: | E0452082016-6 |
| Qualifying State: | NV | List of Officers Due: | 11/30/2016 |
| Managed By: | Managing Members | Expiration Date: | |
| Foreign Name: | | On Admin Hold: | Yes |
| NV Business ID: | NV20161610360 | Business License Exp: | |

## Additional Information

| | |
|---|---|
| Central Index Key: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | FAISAL RAHMAN | Address 1: | 3984 ROYAL VIKING WAY |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89121 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

View all business entities under this registered agent

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

No stock records found for this company

## ─ Officers                                      Include Inactive Officers

No active officers found for this company

## ─ Actions\Amendments

Click here to view 2 actions\amendments associated with this company

# EXHIBIT 2

Home | Forms | Announcements | FAQ | Contact Us

# NEVADA SECRETARY OF STATE
## Barbara K. Cegavske

Search nvsos.gov...                    GO

| SOS INFORMATION | ELECTIONS | BUSINESSES | LICENSING | INVESTOR INFORMATION | ONLINE SERVICES |

My Data Reports    Commercial Recordings    Licensing

# TB HOLDINGS LLC

🔍 New Search                    Manage this Business      $ Calculate List Fees      🖶 Printer Friendly

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 9/19/2013 |
| Type: | Domestic Limited-Liability Company | Entity Number: | E0454692013-8 |
| Qualifying State: | NV | List of Officers Due: | 9/30/2018 |
| Managed By: | Managing Members | Expiration Date: | |
| NV Business ID: | NV20131555378 | Business License Exp: | 9/30/2018 |

## Additional Information

| | |
|---|---|
| Central Index Key: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | TB HOLDINGS LLC C/O MANAGING MEMBER | Address 1: | 9128 DIAMOND LAKE AVE |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89129 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

View all business entities under this registered agent

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

No stock records found for this company

## ⊟ Officers                                              Include Inactive Officers

**Managing Member - CHRISTOPHER M CRAIG**

| | | | |
|---|---|---|---|
| Address 1: | 1520 WINDHAVEN CIRCLE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89129 | Country: | |
| Status: | Active | Email: | |

## ⊟ Actions\Amendments

Click here to view 7 actions\amendments associated with this company

101 N Carson Street Suite 3 Carson City, NV 89701 | (775) 684-5708
© 2016 All Rights Reserved. Privacy Policy and Disclaimer | About This Site

# EXHIBIT 3

Inst #: 20180406-0002230
Fees: $40.00
04/06/2018 04:15:00 PM
Receipt #: 3368670
Requestor:
STEVEN YARMY
Recorded By: COEC   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: FRONT COUNTER
Ofc: MAIN OFFICE

APN#: 162-13-415-008

RETURN TO AND
RECORDING REQUESTED BY:
STEVEN L. YARMY, ESQ.
7464 W SAHARA AVE, STE 8
Las Vegas, Nevada 89117
Trustee Sale No. 73984 Royal Viking
Ph: 702-498-2144

Property Address: 3984 Royal Viking Way, Las Vegas, NV 89121

# NEVADA NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED December 28, 2016. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NOTICE IS HEREBY GIVEN THAT: STEVEN L. YARMY, ESQ. is the trustee having been duly appointed by the beneficiary under a Deed of Trust dated December 28, 2016, executed by PAKUS LLC, as original Trustor; Whereas, NEVADA TITLE, is the original Trustee, and ROMIK YEGHNAZARY is the original Beneficiary under that certain Deed of Trust dated December 28, 2016, and recorded on January 3, 2017 as document number 20170103-0001642 of the Official Records of Clark County, Nevada, in the Office of the Recorder of Clark County, Nevada will SELL on May 2, 2018 at 10:00 AM, in the parking lot of Nevada Legal News located at 930 S. 4TH Street, Las Vegas, NV 89101 at public auction, to the highest bidder for cash (in the forms which are lawful tender in the United States, payable in full at time of sale), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust and more fully described and attached hereto as Exhibit A. The undersigned Trustee disclaims any liability for any incorrectness of the legal description or other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses, and advances at the time of the initial publication of the Notice of Sale is estimated to be $677,479.75. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

1

In addition to cash, the Trustee will only accept a cashier's check or checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorse as a matter or right. Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid principal of the Note secured by said Deed of Trust, with interest thereon as provided in said Note, plus fees, charges, and expenses of the Trustee and of the trusts created by said Deed of Trust. In the event the total indebtedness is not satisfied the beneficiary of said Deed of Trust may seek a deficiency judgment under the laws of the State of Nevada.

Dated: April 6, 2018

_____
Christopher Craig, Authorized Agent

STATE OF NEVADA
COUNTY OF CLARK

On April 6, 2018 before me ____Jerod Perez____, Notary Public, personally appeared Christopher Craig, who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

_____
NOTARY PUBLIC IN AND FOR
SAID COUNTY AND STATE

JEROD PEREZ
Notary Public, State of Nevada
Appointment No. 17-3175-1
My Appt. Expires Aug 31, 2021

2

# EXHIBIT A
## LEGAL DESCRIPTION

COMMONLY KNOWN AS 3984 ROYAL VIKING WAY, LAS VEGAS, NV 89121

APN: 162-13-415-008

LOT 8 OF ROYAL VIKING ESTATE, AS SHOWN BY MAP THEROF FILED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA IN BOOK 25, PAGE 86.

3

**TB Holdings LLC**
**c/o ROMIK YEGHNAZARY**
Ph: 702-498-2144
4982144@gmail.com

04/06/2018

FCL No: ROYALVIKING
Borrower: PAKUS, LLC
Property Address: 3984 ROYAL VIKING WAY, LAS VEGAS, NV 89121
APN: 162-13-415-008

Dear Borrower,

Below is a statement of costs to pay-off the above Loan. Your loan is now accelerated and due in full.
Payment must be made by certified funds payable to TB Holdings LLC, c/o ROMIK YEGHNAZARY.

We reserve the right to amend this demand should any changes occur that would increase or decrease
the total amount for payoff. **Please note that this payoff is only good through 5/2/18**, at which time
you are instructed to contact this office for additional instructions.

| 3984 Royal Viking, Las Vegas, NV 89121 | prepared 04/06/2018 | | | |
|---|---|---|---|---|
| | | | 1/28/2017 | $21,875.00 |
| Date of Default : | | 1/28/2017 | 2/28/2017 | $27,343.75 |
| Principal Amount Due: | | $17,500.00 | 3/28/2017 | $34,179.69 |
| Default Interest at 25.00% per month compounding | | | 4/28/2017 | $42,724.61 |
| 01/28/2017 thru 05/02/2018 | | $641,779.75 | 5/28/2017 | $53,405.76 |
| | | | 6/28/2017 | $66,757.20 |
| Beneficiary Advances: | | | 7/28/2017 | $83,446.50 |
| Attorney Fees and Loss Mitigation Fees 2/17/17: | | $12,500.00 | 8/28/2017 | $104,308.13 |
| Advance to the First Mortgage Estimated | | | 9/28/2017 | $130,385.16 |
| | | | 10/28/2017 | $162,981.45 |
| | | | 11/28/2017 | $203,726.81 |
| | | | 12/28/2017 | $254,658.52 |
| | | | 1/28/2018 | $318,323.15 |
| Trustee's Fees: | | $5,000.00 | 2/28/2018 | $397,903.93 |
| County Recorder Fees: | | $251.00 | 3/28/2018 | $497,379.92 |
| Certified Mailing Fees | | $70.00 | 4/28/2018 | $621,724.00 |
| Reconveyance Fees | | $125.00 | 5/2/2018 | $641,779.75 |
| TSG | | | | |
| Publication and Posting Costs | | $254.00 | | |

**Total Amount Due:**     $     677,479.75

Sincerely,

Chris Craig, Loss Mitigation, 702-498-2144, 4982144@gmail.com

# EXHIBIT 4

## LOAN AGREEMENT

This LOAN AGREEMENT ("Agreement") is dated and effective as of December 28, 2016, between PAKUS, LLC ("Borrower") and ROMIK YEGHNAZARY ("Lender").

### RECITALS:

WHEREAS, pursuant to the terms of this Agreement, Lender has made a series of unsecured loans to Borrower's managing member totaling Seventeen Thousand Five Hundred Dollars and 00/100 Dollars ($17,500.00) or so much thereof as may be advanced ("Loan"); and

WHEREAS, Sherry Rahman has agreed that PAKUS, LLC will be responsible of the debt and Lender has asked that the loan go from an unsecured loan to that of a secured loan; and

WHEREAS, Borrower agrees that the loan shall be secured in the amount of $17,500.00 as a second deed of trust and that the only other lien against 3984 ROYAL VIKING WAY, LAS VEGAS, NV 89121, APN: 162-13-415-008 is a first deed of trust; and

WHEREAS, Borrower and Lender acknowledge that on or about January or February 2015, Lender made two Deposits of $4,000.00 and $16,000.00 into the Tara Account, and another $5,000.00 deposit was made towards an MMA project that did not finalize for a total of $25,000.00; and

WHEREAS, on or about March 2015, Lender and Borrower acknowledge that RAHMAN paid back $10,000.00 of the $25,000.00 towards the unsecured series of loans; and

WHEREAS, because of the RAHMAN being in default on the loan obligations to Lender, Borrower voluntary wishes and acknowledges it will be responsible for the debt of RAHMAN, and that with all accrued pass due interest due and owing to Lender, Borrower acknowledges that the amount due and owing to Lender is $20,000.00 as of the date of this Agreement; and

WHEREAS, Borrower acknowledges that all payments shall be made to the account of ROMIK YEGHNAZARY at any JPMORGAN CHASE BANK branch, Account Number 910168251, Routing Number 322271627 on the date they become due, and thereafter until paid in full; and

This Loan Agreement, and any other collateral documents required by Lender in connection with the Loan (defined below and are collectively called the "Security Documents"), and,

WHEREAS, the terms and conditions of the Note and all Security Documents shall be in form and substance satisfactory to Lender.

NOW, THEREFORE, for valuable consideration, Borrower and Lender agree that the following terms and conditions govern the Loan:

1. <u>Definitions</u>. The following definitions shall be used in this Agreement:

"Agreement" shall mean this Term Loan Agreement, by and between Lender and Borrower, of even date herewith.

"Lender" shall mean ROMIK YEGHNAZARY.

"Borrower" shall mean PAKUS, LLC.

"Event of Default" shall have the meaning for that term set forth in Section 9 of this Agreement.

"Loan Proceeds" shall have the meaning for that term set forth in Section 3 of this Agreement.

"Maturity Date" shall have the meaning for that term set forth in Section 4(c) of this Agreement.

2. Description of Property and Loan. Borrower has taken full responsibility for a series of loans made to RAHMAN, which are collectively secured by a single deed of trust and new promissory note.

3. Loan. The loan is for the security of an obligation that RAHMAN incurred, that is past due and now borrower acknowledges full liability for which is secured by a deed of trust on borrower's property.

4. Disbursement Procedures and Amounts.

(a) *Interest on Loan.* Interest on the Loan shall accrue at the non-default rate specified in the Note. At maturity, upon the occurrence of an Event of Default, or at the acceleration of the Loan, interest on the then outstanding principal balance of the Loan shall accrue at the default rate specified in the Note.

(b) *Principal.* Borrower shall pay the outstanding principal amount of the Loan in accordance with the Note. The entire outstanding principal amount of the Loan, together with all accrued and unpaid interest and all other amounts owed by Borrower to Lender in connection with the Loan, shall be due and payable in full on the maturity date stated in the Note ("Maturity Date"), unless sooner payable pursuant to the terms of this Agreement, by reason of acceleration of the Maturity Date, or otherwise.

(c) Maturity Date. The Maturity Date for this loan shall be July 27, 2017.

5. Reserved.

6. Right to Inspect Property. Lender, or parties designated by Lender, shall have the right to enter upon and inspect the Property from time to time at all reasonable times, upon reasonable notice, for the purpose of determining that the terms and conditions of this Agreement are being observed. Lender is under no obligation to construct or supervise the Property and any inspection by Lender of the Property is for the sole purpose of protecting the security of Lender. Borrower will make or cause to be made such other independent inspections as it may desire for its own protection and Borrower will rely on its own judgment with respect to the Property.

7. Representations and Warranties of Borrower. Borrower, in addition to all other representations made and warranties given herein, represents and warrants to Lender as follows:

(a) No condemnation or eminent domain proceeding has been commenced or, to the knowledge of Borrower, threatened against the Property.

(d) Borrower has no knowledge of any notices or violations of federal or state law or municipal ordinances, including without limitation any Environmental Laws (defined below), or orders or requirements of any governmental body or authority to whose jurisdiction the Property is subject.

(c) The execution, delivery and performance of the transactions contemplated by this Agreement, and the Security Documents will not conflict with or result in a breach of the terms or provisions of any existing law, regulation or order of any court or governmental body or authority, or any other document, instrument or agreement to which Borrower is a party or is bound.

(d) This Agreement, and the Security Documents to which Borrower is a party will be validly executed and delivered by Borrower and will constitute the legal, valid and binding obligations of Borrower, enforceable against it in accordance with their respective terms.

2

(c) Borrower fails to comply with any covenant contained in this Agreement, and does not cure that failure within five (5) days after notice from Lender.

(d) A default occurs under the Note or any other Security Documents.

(e) All or any material portion of the Property is condemned, seized or appropriated by any governmental agency.

(f) The Property is materially damaged or destroyed by fire or other casualty to such an extent that Lender reasonably concludes that funds derived from insurance proceeds, if any (collectively, "Available Proceeds"), will not be sufficient to pay in full the costs of repair, reconstruction and completion (if applicable) of the Property and Borrower fails to deposit into the Account within twenty (20) days after written request therefore, an amount sufficient to pay the difference between estimated costs of repair, reconstruction and completion (if applicable) and the Available Proceeds.

(g) Any litigation is commenced against borrower.

(h) Borrower declares in writing to Lender that it will not be able to satisfy its obligation to Lender.

(i) Borrower misrepresents any facts herein.

(j) Borrower is in default on any other senior obligation, including property taxes.

(h) Borrower is in any defaulted, terminated, suspense, or revoked status for more than 30 days with the secretary of state.

10. <u>Remedies.</u> If any one or more Events of Default shall have occurred and shall continue beyond the expiration of the applicable cure period, if any, specified for such Event of Default, Lender shall have the right and power, all in the sole discretion of Lender, to declare the entire principal balance of the Note then due and payable. These remedies are in addition to any other remedies which Lender may have hereunder or under the Note, the Deed of Trust or any other Security Documents, at law or in equity, including the right to foreclose any security for Borrower's obligations under this Agreement, all in such order and manner as Lender may determine in its sole and absolute discretion. Lender may advance funds to any senior lien holder to protect its security interest and in the event of advancement of funds, borrower shall pay interest and default interest according to the terms of the Note with Lender.

11. <u>Miscellaneous.</u>

(a) *Waiver of Breach.* Lender's rights and remedies under this Agreement, the Note and the Security Documents are cumulative and in addition to all rights and remedies provided by law or in equity from time to time. The exercise by Lender of any right or remedy shall not constitute a cure or waiver of any default, nor invalidate any notice of default or any act done pursuant to any such notice, nor prejudice Lender in the exercise of any other right or remedy. No waiver of any action shall be implied from any omission by Lender to take action on account of such default if such default persists or is repeated. No waiver of any default shall affect any default other than the default expressly waived, and any such waiver shall be operative only for the time and to the extent stated. No waiver of any provision of this Agreement, the Note or any Security Document shall be construed as a waiver of any subsequent breach of the same provision. Lender's consent to or approval of any act by Borrower requiring further consent or approval shall not be deemed to waive or render unnecessary Lender's consent to or approval of any subsequent act. Lender's acceptance of a late performance of any obligation shall not constitute a waiver by Lender of the right to require prompt performance of all further obligations; Lender's acceptance of any performance following the sending or filing of any notice of default shall not constitute a waiver

4

(e) To the best of Borrowers knowledge, there are no actions or proceedings pending or threatened against Borrower, which may in any manner whatsoever substantially affect the validity, priority or enforceability of the Agreement, or the Security Documents or the construction, use, occupancy and operation of the Property or any part thereof.

(f) Telephone services, gas, electric power, storm sewers, sanitary sewer and water facilities are available to the Property, adequate to serve the Property and are not subject to any conditions, other than normal charges to the utility supplier, which would limit the use of such utilities. All streets and easements necessary for construction and operation of the Property are available to the boundaries of the Property.

(g) Borrower has good and marketable title to the Property.

(h) Borrower represents that the first deed of trust holder at the time of signing this agreement is current and not in default. Borrower grants Lender the authority to request any information on the account of the first trust deed holder. Additionally, borrower represents that all property taxes are current, and there are no other liens, deeds of trust, or judgments that would attach or impair lender's security interest in the subject property.

(i)    Borrower's managing member is not and has not been the subject to any lawsuits or judgments prior to the execution of the Loan Documents including this Agreement.

(j) There are no other liens or other judicial liens senior to Lender other than a first deed of trust.

(k) Property taxes are current or will be current within thirty days from the execution of the loan documents.

8. Covenants of Borrower. In addition to any other obligations and duties of Borrower hereunder, Borrower covenants as follows:

(a) Borrower shall give notice immediately to Lender of any notice of any claim made by any party arising in connection with or against the Property or Borrower.

(b) In addition to any insurance requirements set forth in the Deed of Trust (which shall control in the event of a conflict between the terms of this Agreement and the Deed of Trust), Borrower shall maintain in force, until full payment of the Loan, all insurance required by law or Lender, flood insurance and public liability.

(e)    Borrower shall execute and acknowledge, or cause to be executed and acknowledged, and delivered to Lender all documents, and take all actions, reasonably required by Lender from time to time to confirm the rights created or now or hereafter intended to be created under this Agreement or any other Security Document, to protect and further the validity, priority and enforceability of the Security Documents, to subject to the Security Documents any property intended by the terms of this Agreement, or any Security Document to be covered by the Security Documents, or otherwise to carry out the purposes of this Agreement and the transactions contemplated hereunder.

9. Default by Borrower. The occurrence of any of the following events shall constitute an Event of Default under this Agreement:

(a) Borrower fails to make any payment of interest or principal when due under the Note.

(b) Borrower fails to comply with any other covenants contained in this Agreement that calls for the payment of money and does not cure that failure within five (5) days after notice from Lender.

3

of Lender's right to proceed with the exercise of its remedies for any unfulfilled obligations; and Lender's acceptance of any partial performance shall not constitute a waiver by Lender of any rights relating to the unfulfilled portion of the applicable obligation.

(b) *Notices.* Except as otherwise provided by law, any notice, request, demand, consent, approval or other communication ("Notice") provided or permitted under this Agreement, or any other instrument contemplated hereby, shall be in writing, signed by the party giving such Notice and shall be given by personal delivery to the other party or by United States certified or registered mail, postage prepaid, return receipt requested, addressed to the party for whom it is intended at its address as set forth in the Deed of Trust. Unless otherwise specified, Notice shall be deemed given when received, but if delivery is not accepted, on the earlier of the date delivery is refused or the third day after same is deposited in any official United States Postal Depository. Any party from time to time, by Notice to the other parties given as above set forth, may change its address for purpose of receipt of any such communication.

(c) *Assignment.* The provisions hereof shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, administrators, executors, successors, and assignees.

(d) *Entire Agreement.* This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior negotiations, understandings and agreements between the parties hereto.

(e) *Severability.* It is understood and agreed by the parties hereto that if any part, term or provision of this Agreement is held by any court to be illegal or invalid, the legality and validity of the remaining portions or provisions shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if the Agreement did not contain the particular part, term or provision held to be illegal or invalid.

(f) *Interpretation.* The section headings set forth in this Agreement are for the purpose of convenience to and ready reference by the parties. It is agreed and understood by the parties that such headings shall not be deemed to define, limit or extend the scope or intent of the sections to which they pertain. Whenever the context requires, all words used in the singular will be construed to have been used in the plural and vice versa, and each gender will include any other gender.

(g) *Incorporation.* The preamble, exhibits and schedules attached hereto are hereby incorporated into this Agreement and made a part hereof.

(h) *Performance By Lender.* If Borrower shall fail to perform any obligation hereunder that requires the payment of money, Lender may perform such obligation upon fifteen (15) days' written notice to Borrower (unless Lender shall in its sole discretion determine that the security for the Loan is imminently threatened or impaired by such failure, in which case no such prior notice is required), and any sums expended by Lender pursuant to this subsection shall be deemed to be advances under the Loan and shall bear interest until repaid at the default rate of interest specified in the Note, but shall not constitute a condition of default by Borrower.

(i) *Costs and Expenses.* If any lawsuit is commenced to enforce or interpret any of the terms of this Agreement, the prevailing party shall have the right to recover its reasonable attorneys' fees and costs of suit from the other party.

(j) *Consistency.* The terms of this Agreement, the Note and the Security Documents supersede any inconsistent terms of Lender's loan commitment to Borrower, if any; provided, that all obligations of Borrower under the commitment to pay any fees to Lender or any costs and expenses relating to the Loan or the commitment shall survive the execution and delivery of this Agreement, the Note and the Security Documents. The terms of this Agreement supersede any

5

inconsistent terms of the Note or the Security Documents.

(k) *Relationship*. Nothing herein shall be construed to constitute Lender and Borrower a partnership or joint venture, or Lender an agent of Borrower, it being agreed that the sole relationship between Lender and Borrower shall be that of lender and borrower.

(l) *Governing Law*. It is understood and agreed by the parties that this Agreement is made in the State of Nevada and that the laws of the State of Nevada shall govern the legality, validity, construction, interpretation and effect of this Agreement. The parties agree that jurisdiction and venue shall be exclusively in Clark County Nevada.

(m) *Participations*. Lender may grant participations in the Loan and the Note and Security Documents at any one time and may furnish any participant or prospective participant with all documents and information relating to Borrower and the Loan that Lender deems advisable in connection therewith. Borrower's indemnity obligations under this Agreement, the Note and the Security Documents shall also apply with respect to any participant and the directors, officers, agents and employees of any participant.

(n) *Cure Periods*. All cure periods provided for herein or in the Note, the Deed of Trust or the Security Documents, shall run concurrently with any statutory cure periods.

(o) *Counterparts*. This Loan Agreement may be executed in any number of counterparts each of which shall be deemed an original and all of which shall constitute one and the same effect as if all parties had signed the same signature page. Any signature page of this Loan Agreement may be detached from any counterpart of this Loan Agreement identical in form hereto but having attached to its one or more additional signature page.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate as of the day and year first above written.

BORROWER:

_____

PAKUS, LLC by SHERRY RAHMAN
Its Managing Member

LENDER:

ROMIK YAGHNAZARY

_____

ROMIK YAGHNAZARY

6

## EXHIBIT A

### Legal Description

COMMONLY KNOWN AS 3984 ROYAL VIKING WAY, LAS VEGAS, NV 89121

APN: 162-13-415-008

LOT 8 OF ROYAL VIKING ESTATE, AS SHOWN BY MAP THEROF FILED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA IN BOOK 25, PAGE 86.

## PROMISSORY NOTE

### SECURED BY SECOND DEED OF TRUST

$17,500.00           **Las Vegas, Nevada**           December 28, 2016

      For value received, the undersigned, **PAKUS, LLC**, a Nevada Limited Liability Company (the "Maker"), hereby promises to pay to the order of **ROMIK YEGHNAZARY**, an individual (the "Lender"), at 8265 Turtle Creek Circle, Las Vegas, Nevada 89113, the principal sum of SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS and 00/100 Dollars ($17,500.00) or so much thereof as may be advanced, together with interest thereon at the rate herein set out ("Loan").

      The pre-maturity interest rate on this Note shall be fifteen percent (15.00%) per annum. For purposes of this Note, the "Maximum Rate Allowed by Applicable Law" means the maximum rate of interest permitted under federal law or the laws of the State of Nevada.

      Subject to the right of the Lender to exercise his right to declare the Note due as provided below, the principal and interest hereon shall be due and payable as follows:

(a)     Six (6) monthly installments of accrued interest on the unpaid principal balance in the amount of $218.75 per month, to be due and payable beginning on January 28, 2017 and the entire principal balance due on July 27, 2017 of $17,500.00.

          (b)     A final installment in the amount of the full unpaid principal and accrued interest and other amounts outstanding, shall be fully due and payable on July 22, 2017 ("Maturity Date").

      Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest, then to unpaid principal and then to unpaid collection costs. Prepayments will be applied to installments on the last maturing principal, and interest on that prepaid principal will immediately cease to accrue. The annual interest rate for this Note is computed on a 365/365 basis; that is, by applying the ratio of the annual interest rate over a year of 365 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be.

      All payments under this Note made to Lender shall be made in immediately available funds to the account of ROMIK YEGHNAZARY at any JPMORGAN CHASE BANK branch, Account Number 910168251, Routing Number 322271627 (or at such other place as Lender, in Lender's sole discretion, may have established by delivery of written notice thereof to Maker from time to time), without offset, in lawful money of the United States of America. Payments by check or draft shall not constitute payment in immediately available funds until the required amount is actually received by Lender in full.

      Maker will pay interest on all sums due after final maturity, whether by acceleration or otherwise, at twenty five percent per month of the outstanding principal balance, attorney's fees, costs to foreclose and any interest accruing, compounding monthly on all sums due.

Maker reserves the right to prepay the unpaid principal balance of the Note and all accrued and unpaid interest in full any time prior to the Maturity Date. If this Note is extended beyond the Maturity Date, Maker may prepay this Note without penalty. Early payments will not, unless agreed to by Lender in writing, relieve Maker of Maker's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Interest shall immediately cease upon any amounts of principal so prepaid.

The term "Event of Default," as used herein, shall mean the occurrence or happening, at any time and from time to time, of any one or more of the following:

(a)     Maker shall fail, refuse, or neglect to pay, in full, any installment or portion of this Note as and when the same shall become due and payable, whether at the due date thereof stipulated herein, upon acceleration or otherwise;

(b)     Any representation, warranty, or statement made by Maker, any guarantor, or others under or pursuant to this Note, Loan Agreement or any other deeds of trust, security agreements, guaranty agreements, loan agreements or other collateral documents securing the indebtedness represented by this Note (the "Loan Documents") or any affidavit or other instrument executed or delivered with respect to the Loan Documents or this indebtedness is determined by Lender to be false or misleading in any material respect as of the date hereof or when made;

(c)     Maker shall default or commit an event of default under and pursuant to any other deed of trust, loan agreement or security agreement, or property taxes which covers or affects any part of the collateral securing this Note;

(d)     Maker (i) shall execute an assignment for the benefit of creditors or an admission in writing by Maker of Maker's inability to pay, or Maker's failure to pay, debts generally as the debts become due; or (ii) shall allow the levy against the collateral securing this Note or any part thereof, of any execution, attachment, sequestration or other writ which is not vacated within sixty (60) days after the levy; or (iii) shall allow the appointment of a receiver, Trustee or custodian of Maker or of the collateral securing this Note or any part thereof, which receiver, Trustee or custodian is not discharged within sixty (60) days after the appointment; or (iv) files as a debtor a petition, case, proceeding or other action pursuant to, or voluntarily seeks the benefit or benefits of any provision of Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors ("Debtor Relief Law"), or takes any action in furtherance thereof; or (v) files either a petition, complaint, answer or other instrument which seeks to effect a suspension of, or which has the effect of suspending any of the rights or powers of Lender or of any Trustee granted herein or in any Loan Document; or (vi) allows the filing of a petition, case, proceeding or other action against Maker as a debtor under any Debtor Relief Law or seeks appointment of a receiver, Trustee, custodian or liquidator of any collateral securing this Note, or any part thereof, or of any significant portion of Maker's other property; and (a) Maker admits, acquiesces in or fails to contest diligently the material allegations thereof, or (b) the petition, case, proceeding or other action results in the entry of an order for relief or order granting the relief sought against Maker, or (c) the petition, case, proceeding or other action is not permanently dismissed or discharged on or before the earlier of trial thereon or thirty (30) days next following the date of filing;

(e)      Maker creates, places, or permits to be created or placed, or through any act or failure to act, acquiesces in the placing of, or allows to remain, any subordinate interest, regardless of whether such subordinate interest is expressly subordinate to the liens or security interests of the Loan Documents, with respect to the collateral securing this Note.

(f)      Should Lender advance any funds to protect its security interest to any senior lien holder or advance funds to pay any past due property taxes.

(g)      Borrower is in any defaulted, terminated, suspense, or revoked status for more than 30 days with the secretary of state.

Upon the occurrence of an Event of Default under the terms hereof or an occurrence of default under the terms of any of the documents, instruments or any other deeds of trust, security agreements, or other collateral documents securing the indebtedness represented by this Note, then in such event Lender may, at its option, declare the entire unpaid balance of principal of, and accrued interest on, this Note to be immediately due and payable, foreclose all security interests and liens securing payment hereof or any part hereof, and set off against this Note any and all of Maker's other liabilities to Lender all money or property in Lender's possession held for or owed to Maker. Notwithstanding the foregoing, (1) upon a monetary Event of Default, Lender shall provide Borrower written notice specifying the Event of Default, and Borrower shall have five (5) days after receipt of such notice to cure the same and (2) upon a non- monetary Event of Default, Lender shall provide Borrower written notice specifying the Event of Default, and Borrower shall have thirty (30) days after receipt of such notice to cure the same.

In the event of any default, a default interest of twenty-five percent (25%) per month compounding of the principal balance outstanding together with all accruing interest, attorney's fees and costs to foreclose per month will be charged by Lender to borrower, including on protective advances, and should Lender advance funds to a senior Lender to protect its interest, the senior loan shall be modified bearing the interest rate and default rate of this loan.

If this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings judicial or non-judicial, Maker agrees to pay an additional any amount as attorney's fees and other costs of collection, including, but not limited to, court costs of Lender.

Except as specifically set forth herein, Maker and each surety, endorser, and guarantor, waive presentment for payment, notice of intent to accelerate, notice of acceleration, protest, and notice of protest and nonpayment, and agree that Maker's liability on this Note shall not be affected by any renewal or extension of the time of payment hereof or by any indulgences, and hereby consent to any and all renewals, extensions, indulgences, or changes, regardless of the number thereof, either before or after maturity.

This Note is secured by the liens, assignments, and security interests created by that certain Deed of Trust of even date herewith on the real property and improvements in the Clark County, Nevada and being more particularly described on Exhibit A attached hereto and incorporated herein by reference.

Borrower may not extend the Note.

The laws of the State of Nevada shall govern this Note and it shall be enforceable, payable

and collectible in Las Vegas, Clark County, Nevada.

MAKER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY LENDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS NOTE OR THE OTHER LOAN DOCUMENTS.

THIS LOAN IS PAYABLE IN FULL ON JULY 27, 2017. MAKER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. MAKER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT MAKER MAY OWN, OR MAKER WILL HAVE TO FIND A LENDER, WHICH MAY BE LENDER, WILLING TO LEND MAKER THE MONEY. IF MAKER REFINANCES THIS LOAN AT MATURITY, MAKER WILL HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF MAKER OBTAINS REFINANCING FROM LENDER.

**Maker**

_____

PAKUS, LLC by SHERRY RAHMAN
Its Managing Member

## EXHIBIT A

### Legal Description

COMMONLY KNOWN AS 3984 ROYAL VIKING WAY, LAS VEGAS, NV 89121

APN: 162-13-415-008

LOT 8 OF ROYAL VIKING ESTATE, AS SHOWN BY MAP THEROF FILED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA IN BOOK 25, PAGE 86.

APN: 162-13-415-008

. RECORDING REQUESTED BY:
ROMIK YEGHNAZARY
8265 Turtle Creek Circle
Las Vegas, NV 89113

WHEN RECORDED RETURN TO:
ROMIK YEGHNAZARY
8265 Turtle Creek Circle
Las Vegas, NV 89113

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, (this "**Deed of Trust**") is made and effective as of DECEMBER 28, 2016, by PAKUS, LLC, a Nevada Limited Liability Company, ("**Trustor**"), whose address is 3984 ROYAL VIKING WAY, LAS VEGAS, NEVADA 89121 to NEVADA TITLE ("**Trustee**"), for the benefit of ROMIK YEGHNAZARY ("**Beneficiary**"), whose address is 8265 Turtle Creek Circle, Las Vegas, Nevada 89113.

### W I T N E S S E T H :

**DEFINITIONS** - As used in this Deed of Trust, the following terms have the following definitions:

"**Appurtenant Rights**" means all tenements, hereditaments, rights, reversions, remainders, development rights, privileges, benefits, easements, rights-of-way, gores or strips of land, streets, ways, alleys, passages, sewer rights, water rights and powers, and all appurtenances whatsoever and claims or demands of Trustor at law or in equity now or hereafter in any way belonging, benefiting, relating or appertaining to any of the Trust Estate.

"**Bankruptcy**" means, with respect to any Person, that such Person: (a) is the subject of any order for relief under any Bankruptcy Law; (b) commences a voluntary proceeding under any Bankruptcy Law; (c) consents to the entry of an order for relief in an involuntary proceeding under any Bankruptcy Law; (d) consents to the appointment of, or taking possession by, any Receiver (other than a Receiver put in place by Beneficiary); (e) makes any assignment for the benefit of creditors; (f) is unable or fails, or admits in writing its inability, to pay its debts as such debts become due; or (g) is the subject of any involuntary proceeding under any Bankruptcy Law or involuntary appointment of a Receiver, and such involuntary proceeding or appointment is not dismissed and terminated within 60 days.

"**Bankruptcy Case**" means a case number given to a bankruptcy case.

"**Bankruptcy Law**" means the United States Bankruptcy Code (Title 11) and any other state or federal bankruptcy, insolvency, reorganization or similar law for the relief of debtors applicable to the parties to the Note or to the Trust Estate.

1

"**Beneficiary**" means the Beneficiary named in the first paragraph above, together with its successors and assigns.

"**Deed of Trust**" means this Second Deed of Trust, as it may be amended, supplemented or otherwise modified from time to time and as represented by Borrower.

"**Default Rate**" means :  Upon the occurrence of an Event of Default under this Note or the Loan Documents, the entire unpaid principal balance hereof shall, for all purposes, thereafter earn interest at the rate of twenty five percent (25%) per month compounding on the entire past due unpaid principal amount and all accrued interest each and every month the principal amount and accrued interest remains unpaid from the date of such default until the unpaid principal balance hereof, interest, Late Charges, attorney's fees, and any all advancements made to protect lender's security interest, and all other costs and amounts payable under this Note and the Loan Documents shall have been paid in full.

"**Event of Default**" has the meaning set forth in <u>Section 3.1</u> hereof.

"**Governmental Authority**" means any court, board, agency, commission, department, bureau, office or authority of any nature whatsoever for any governmental unit or entity (federal, state, county, district, municipal, city or otherwise) now or hereafter in existence.

"**Imposition**" means any taxes, assessments, water rates, sewer rates, maintenance charges, other governmental impositions and other charges now or hereafter levied or assessed or imposed against the Trust Estate or any part thereof.

"**Improvements**" means, as applicable with respect to the Real Property: (1) all the buildings, structures, facilities and improvements of every nature whatsoever now or hereafter situated on such parcel or any real property encumbered by this Deed of Trust; (2) all fixtures, machinery, equipment and systems now or hereafter attached to or made a part of such parcel or any real property encumbered by this Deed of Trust; (3) all personal property now or hereafter owned or leased by Trustor or in which Trustor has any rights or interest located in or on, or attached to, or used on or in connection with such parcel or any real or personal property encumbered by this Deed of Trust or any other Improvements; and (4) all extensions, additions, accessions, improvements, betterments, renewals, substitutions, and replacements to any of the foregoing.

"**Leases**" means any and all leases, subleases, licenses, concessions, operating agreements, management agreements, and all other agreements affecting the Trust Estate that Trustor has entered into, taken by assignment, taken subject to, or assumed, or has otherwise become bound by, now or in the future, that give any Person the right to conduct its business on, or otherwise use, operate or occupy, all or any portion of the Real Property or Improvements, together with all amendments, extensions, and renewals of the foregoing and all rental, occupancy, service, maintenance or any other similar agreements pertaining to use or occupation of, or the rendering of services at the Real Property, the Improvements or any part thereof.  "**Lease**" in the singular means any one of the Leases.

2

"**Legal Requirements**" means all applicable restrictive covenants, applicable zoning and subdivision ordinances and building codes, all applicable health and Environmental Laws and regulations, and all other applicable laws, ordinances, rules, regulations, judicial decisions, administrative orders, and other requirements of any Governmental Authority having jurisdiction over Trustor and/or the Trust Estate, in effect either at the time of execution of this Deed of Trust or at any time during the term hereof.

"**Loan Agreement**" means that certain Loan Agreement dated on even date with this Deed of Trust by and between Trustor, as Borrower, and Beneficiary, as Lender, with respect to the loan evidenced by the Note, as it may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**Note**" means that certain Promissory Note in the original principal amount of SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS and 00/100 Dollars ($17,500.00) dated and given on even date with this Deed of Trust by Trustor to Beneficiary, as it may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"**Permitted Encumbrances**" means only a First Deed of Trust senior to Lender.

"**Person**" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, or other legal entity.

"**Proceeds**" shall include but not be limited to (i) any and all proceeds of any insurance, indemnity, warranty or guaranty payable from time to time with respect to any of the Trust Estate; (ii) any and all payments in any form whatsoever made or due and payable from time to time in connection with any condemnation, taking, or forfeiture of all or any part of the Trust Estate by any Governmental Authority; (iii) subject to the absolute assignment contained herein, the Rents or other benefits arising out of, in connection with or pursuant to any Lease of the Trust Estate; and (iv) any and all other amounts from time to time paid or payable in connection with any of the Trust Estate.

"**Real Property**" means that certain real property situated in the County of Clark County, State of Nevada, located at **3984 Royal Viking Way, Las Vegas, Nevada 89121** and as more particularly described on **Exhibit A** attached hereto and incorporated herein by reference, including any after acquired title thereto, and together with all Improvements located on each such parcel of real property.

"**Receiver**" means, with respect to any Person (including Trustor), any receiver, trustee, custodian, debtor in possession, liquidator, sequestrator, administrator, conservator, or other successor appointed (whether by a court or otherwise) pursuant to any creditors exercise of remedies against such Person, or pursuant to a Bankruptcy of such Person, or for purposes of reorganization or liquidation, or otherwise for the benefit of such Person's creditors, or under any similar circumstances, or otherwise having similar powers over such Person or its property, whether such Receiver acts on an interim, temporary, or final basis and whether such appointment applies to all or any significant portion of such Person's assets or property, including or not including any of the Trust Estate.

3

"**Rents**" means all rents, revenues, security deposits, fees, income, receipts, issues, profits, proceeds and other benefits to which Trustor may now or hereafter be entitled from the Real Property, the Improvements, the Leases or any property encumbered by this Deed of Trust or any business or other activity conducted by Trustor at the Real Property or the Improvements.

"**Secured Obligations**" means all indebtedness and other obligations of Trustor evidenced by, payable under or pursuant to, or required to be performed by Trustor in connection with, the Note, this Deed of Trust, or the Loan Agreement, and, without duplication, the following: (i) the payment by Trustor to Beneficiary of all indebtedness now or hereafter owed to Beneficiary by Trustor, whether at stated maturity, by acceleration or otherwise, together with any interest thereon, fees, expenses, liquidated damages, indemnification or otherwise, in connection therewith and extensions, modifications and renewals thereof, (ii) the performance by Trustor of all other obligations and the discharge of all other liabilities of Trustor to Beneficiary of every kind and character, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, joint, several and joint and several, and whether created under this Deed of Trust, the Note, the Loan Agreement, or otherwise, (iii) any and all sums advanced by Beneficiary in order to preserve the Trust Estate or preserve Beneficiary's security interest in the Trust Estate (or the priority thereof) and (iv) the expenses of retaking, holding, preparing for sale or lease, selling or otherwise disposing of or realizing on the Trust Estate, of any proceeding for the collection or enforcement of any indebtedness, obligations or liabilities of Beneficiary referred to above, or of any exercise by Beneficiary of its rights hereunder, together with reasonable attorneys' fees and disbursements and court costs.

"**Title Insurer**" means any title insurance company issuing a policy of title insurance to Beneficiary in connection with this Deed of Trust.

"**Trustee**" means Nevada Title or any successor thereto appointed in accordance with this Deed of Trust.

"**Trust Estate**" is defined in the Granting Clause below.

"**Trustor**" means the Trustor named in the first paragraph above, together with her successors and assigns of the Trust Estate, or any part thereof, at any time and from time to time, as the case requires.

## GRANTING CLAUSE

In consideration of Beneficiary making the loan evidenced by the Note, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and for the purpose of securing in favor of Beneficiary the Secured Obligations, Trustor does hereby, subject to the terms and conditions hereof, assign, bargain, convey, pledge, release, hypothecate, warrant, and transfer unto Trustee, in trust with power of sale and right of entry, for the benefit of Beneficiary, all of Trustor's right, title and interest, whether now owned or existing or hereafter acquired or arising, in each of the following (collectively, the "**Trust Estate**"):

(A)    The Real Property;

(B)    TOGETHER WITH the Improvements;

4

(C)     TOGETHER WITH all Appurtenant Rights;

(D)     TOGETHER WITH (i) all of Trustor's right, title and interest in and to all judgments and decrees, insurance proceeds, and awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of any of the property described in Granting Clauses (A) through (D) hereof, and, during the continuance of an Event of Default, Beneficiary is hereby authorized to collect and receive said awards and proceeds and to give proper receipts therefor, and to apply the same toward the payment of the Secured Obligations; and (ii) whether arising from any voluntary or involuntary disposition of the property described in Granting Clauses (A) through (D), all Proceeds, products, replacements, additions, substitutions, renewals and accessions, remainders, reversions and after-acquired interest in, of and to such property;

(F)     TOGETHER WITH the absolute assignment of all of the Leases, together with all of the following (including all "Cash Collateral" within the meaning of the Bankruptcy Law) arising from the Leases: (a) Rents (subject, however, to the aforesaid absolute assignment to Beneficiary and the conditional permission herein below given to Trustor to collect the Rents), (b) all guarantees, letters of credit, security deposits, collateral, cash deposits, and other credit enhancement documents, arrangements and other measures with respect to the Leases, (c) all of Trustor's right, title, and interest under the Leases, including the following: (i) the right to receive and collect the Rents from the lessee, sublessee or license, or their successor(s), under any Lease(s) and (ii) the right to enforce against any tenants thereunder and otherwise any and all remedies under the Leases, including Trustor's right to evict from possession any tenant thereunder or to retain, apply, use, draw upon, pursue, enforce or realize upon any guaranty of any Lease; to terminate, modify, or amend the Leases; to obtain possession of, use, or occupy, any of the real or personal property subject to the Leases; and to enforce or exercise, whether at law or in equity or by any other means, all provisions of the Leases and all obligations of the tenants thereunder based upon (A) any breach by such tenant under the applicable Lease (including any claim that Trustor may have by reason of a termination, rejection, or disaffirmance of such Lease pursuant to any Bankruptcy Law) and (B) the use and occupancy of the premises demised, whether or not pursuant to the applicable Lease (including any claim for use and occupancy arising under landlord-tenant law of the State of Nevada or any Bankruptcy Law). Permission is hereby given to Trustor, so long as no Event of Default has occurred and is continuing hereunder, to collect and use the Rents, as they become due and payable, but not in advance thereof, and to exercise the administrative rights specified in (c)(ii) above. Upon the occurrence and during the continuance of an Event of Default and the giving of written notice by the Beneficiary to the Trustor of such Event of Default, such permission hereby given to Trustor to collect the Rents and to exercise the administrative rights specified in (ii) above shall automatically terminate. Beneficiary shall have the right, during the continuance of any Event of Default of which the Trustor has been notified by the Beneficiary in writing, to notify any lessee under any Lease of the rights of Beneficiary as provided by this section;

(G)     TOGETHER WITH all of Trustor's right, title and interest in and to any and all maps, plans, budgets, designs, specifications, marketing plans, feasibility studies, soils tests, surveys, other studies and tests, reports, data and drawings relating to the Real Property or Improvements or any contemplated new Improvements to be constructed on the Real Property;

provided, however, that Trustor shall maintain custody and control over same except upon the occurrence and during the continuance of an Event of Default;

(H)    TOGETHER WITH, all of Trustor's right, title, and interest in and to any and all licenses, permits, variances, special permits, franchises, certificates, rulings, certifications, validations, exemptions, filings, registrations, authorizations, consents, approvals, waivers, orders, rights and agreements (including, without limitation, options, option rights, subdivision rights and contract rights) now or hereafter obtained by Trustor from any Governmental Authority having or claiming jurisdiction over the Real Property, or the Improvements or providing access thereto, or the operation of any business on, at, or from the Real Property;

(I)    TOGETHER WITH all water stock, water permits and other water rights of any kind or nature relating to or appurtenant to the Real Property;

(J)    TOGETHER WITH all oil and gas and other mineral rights, if any, in or pertaining to the Real Property and all royalty, leasehold and other rights of Trustor pertaining thereto;

(K)    TOGETHER WITH, all of Trustor's right, title, and interest in and to all extensions, improvements, betterments, renewals, substitutes for and replacements of, and all additions, accessions, and appurtenances to, any of the foregoing that Trustor may subsequently acquire or obtain by any means, or construct, assemble, or otherwise place on any of the Trust Estate;

(L)    TOGETHER WITH all royalties, earnings, income, proceeds, products, rents, revenues, reversions, remainders, issues, profits, avails, production payments, and other benefits directly or indirectly derived or otherwise arising from any of the foregoing, all of which are hereby assigned to Beneficiary, who, except as otherwise expressly provided in this Deed of Trust, is authorized to collect and receive the same, to give receipts therefor and to apply the same to the Secured Obligations hereunder following any Event of Default;

(M) Together with any Solar System installed by Solar City, subject to its Lien; and

(N)    TOGETHER WITH Proceeds of the foregoing property described in Granting Clauses (A) through (M).

## ARTICLE ONE

## COVENANTS OF TRUSTOR

1.1    **Performance of Obligations.** Trustor shall perform, observe and comply with each and every provision of this Deed of Trust, the Loan Agreement, and the Note creating obligations or covenants of Trustor and shall promptly pay, when payment shall become due, all sums required to be paid by Trustor under the Note, the Loan Agreement, and this Deed of Trust.

1.2    **General Representations, Covenants and Warranties.**

(a)    Trustor represents, covenants and warrants that: (a) Trustor has good and marketable title to an indefeasible fee estate in the Land, free and clear of all liens and encumbrances except for a first deed of trust, (b) Trustor has the right to hold, occupy and enjoy

the interest in the Trust Estate, and has good right, full power and lawful authority to subject the Trust Estate to the lien of this Deed of Trust and pledge the same as provided herein and Beneficiary may at all times peaceably and quietly enter upon, hold, occupy and enjoy the entire Trust Estate in accordance with the terms hereof; (c) all costs arising from construction of any Improvements, the performance of any labor and the purchase of all Personal Property and Improvements have been or shall be paid when due; (d) no material part of the Trust Estate has been damaged, destroyed, condemned or abandoned; (e) Trustor has no knowledge of any contemplated or pending condemnation proceeding with respect to any portion of the Trust Estate; and (f) to the knowledge of Trustor, the Trust Estate and all structures, equipment, fixtures or activities thereon are in compliance with all applicable zoning and land use ordinances and regulations, building codes, and fire codes on the Real Property.

(c)     No bankruptcy or insolvency proceedings are pending or contemplated by or, to the best of Trustor's knowledge, against Trustor, other than the Bankruptcy Case referenced herein above. The loan evidenced by the Note, the Loan Agreement, this Deed of Trust, and Trustor's obligations thereunder have been approved by the Court in the Bankruptcy Case.

(d)     Trustor holds the Real Property for investment purposes.

(e)     There are no other liens or other judicial liens senior to Lender other than a first deed of trust.

(f)     Property taxes are current or will be current within thirty days from the execution of this Second Deed of Trust.

(g)     Borrower's managing member is not and has not been the subject to any lawsuits or judgments prior to the execution of the Loan Documents including this deed of trust.

**1.3    Compliance with Legal Requirements.**    Trustor shall promptly, fully, and faithfully comply in all material respects with all Legal Requirements and shall cause all portions of the Trust Estate and its use and occupancy to comply with Legal Requirements in all material respects at all times.

**1.4    Taxes.**    Trustor shall pay all Impositions prior to delinquency and shall deliver to Beneficiary promptly upon Beneficiary's request evidence satisfactory to Beneficiary that the Impositions have been paid or are not delinquent; provided that Trustor may contest, in good faith any Imposition so long as Trustor posts an adequate bond therefor or maintains adequate reserves therefor. Trustor shall not suffer to exist, permit or initiate the joint assessment of the real and personal property, or any other procedure whereby the lien of the real property taxes and the lien of the personal property taxes shall be assessed, levied or charged to the Real Property as a single lien, except as may be required by law. In the event of the passage of any law deducting from the value of real property for the purposes of taxation any lien thereon, or changing in any way the taxation of deeds of trust or obligations secured thereby for state or local purposes, or the manner of collecting such taxes and imposing a tax, either directly or indirectly, on this Deed of Trust, Trustor shall pay all such taxes.

**1.5    Insurance and Condemnation.**

7

    (a)    Trustor, at its sole cost, for the mutual benefit of Trustor and Beneficiary, shall obtain and maintain, or cause to be obtained and maintained, the following policies of insurance:

    (i)    Property insurance insuring against loss or damage customarily included under so called "all risk" or "special form" policies including fire, lightning, flood, earthquake, vandalism, and malicious mischief, boiler and machinery and coverage for damage or destruction caused by "war", if available, and the "certified" (as defined in the Terrorism Risk Insurance Act of 2002) acts of terrorists (or such policies shall have no exclusion from coverage with respect thereto) and such other insurable hazards as, under good insurance practices, from time to time are insured against for other property and buildings similar to the Improvements in nature, use, location, height, and type of construction. Such insurance policy shall also insure costs of demolition and increased cost of construction (which insurance for demolition and increased cost of construction may contain a sub-limit satisfactory to Beneficiary). Each such insurance policy shall (i) be in an amount equal to the greater of (A) one hundred percent (100%) of the then replacement cost of the Improvements without deduction for physical depreciation, and (B) such amount as is necessary so that the insurer would not deem Trustor a co-insurer under such policies, (ii) have deductibles no greater than $5,000 per occurrence, (iii) be paid annually in advance and (iv) contain an agreed amount replacement cost endorsement with a waiver of depreciation, and shall cover, without limitation, all tenant improvements and betterments that Trustor is required to insure pursuant to any Lease on a replacement cost basis. Such insurance policy shall be endorsed to also provide guaranteed building replacement cost to the Improvements in an amount to be subject to the consent of Beneficiary, which consent shall not be unreasonably withheld, but in all events, not less than would be required to restore the Improvements following a Casualty. Beneficiary shall be named Lender Loss Payee on a Standard Mortgagee Endorsement.

    (ii)    Flood insurance if any part of the Real Property is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards, in an amount at least equal to the lesser of: (i) the then full replacement cost of the Improvements without deduction for physical depreciation and (ii) the maximum limit of coverage available under the National Flood Insurance Plan with respect to the Improvements.

    (iii)    Public liability insurance, including (i) "Commercial General Liability Insurance", (ii) "Owned", "Hired" and "Non Owned Auto Liability"; and (iii) umbrella liability coverage for personal injury, bodily injury, death, accident and property damage, such insurance providing in combination no less than $1,000,000 per occurrence and $1,000,000 in the annual aggregate on per location basis. The policies described in this subsection shall also include coverage for independent contractors, "Contractual Liability" (covering, to the maximum extent permitted by law, Trustor's obligation to indemnify Beneficiary as required under this Deed of Trust), "Products" and "Completed Operations Liability" coverage.

    (iv)    To the extent such equipment exists on the Property, comprehensive boiler and machinery insurance covering all mechanical and electrical equipment against physical damage, rent loss and improvements loss and covering, without limitation, all improvements that Trustor is required to insure pursuant to any Lease on a replacement cost basis.

(v)    Such other insurance on the Improvements or on any replacements or substitutions thereof or additions thereto as may from time to time be reasonably required by Beneficiary against other insurable hazards or casualties which at the time are commonly insured against in the case of property similarly situated including, without limitation, sinkhole, mine subsidence and environmental insurance, due regard being given to the height and type of buildings, their construction, location, use and occupancy.

(b)    All policies of insurance (the "**Policies**") required pursuant to Section 1.5(a) shall, to the extent required under (i) be issued by companies approved by Beneficiary and licensed to do business in the State of Nevada, with a claims paying ability rating of "A" or better by S&P (and the equivalent by any other rating agency) and a rating of A:VII or better in the current Best's Insurance Reports; (ii) name Beneficiary and its successors and/or assigns as their interests may appear as the mortgagee (in the case of property and rent loss or business interruption insurance) or an additional insured (in the case of liability insurance); (iii) contain (in the case of property insurance) a Non-Contributory Standard Mortgagee Clause and a Lender's Loss Payable Endorsement, or their equivalents, naming Beneficiary as the Person to which all payments made by such insurance company shall be paid; (iv) contain provisions permitting Trustor to waive its right of subrogation against Beneficiary; (v) be assigned and the originals thereof delivered to Beneficiary; (vi) contain such provisions as Beneficiary deems reasonably necessary or desirable to protect its interest, including (A) endorsements providing that neither Trustor, Beneficiary nor any other party shall be a co-insurer under the Policies, (B) that Beneficiary shall receive at least thirty (30) days' prior written notice of any modification, reduction or cancellation of any of the Policies, (C) an agreement whereby the insurer waives any right to claim any premiums and commissions against Beneficiary, provided that the policy need not waive the requirement that the premium be paid in order for a claim to be paid to the insured, and (D) providing that Beneficiary is permitted to make payments to effect the continuation of such Policy upon notice of cancellation due to non-payment of premiums; and (vii) be satisfactory in form and substance to Beneficiary and approved by Beneficiary as to amounts, form, risk coverage, deductibles, loss payees and insureds. Trustor shall pay the premiums for such Policies (the "**Insurance Premiums**") as the same become due and payable and furnish to Beneficiary evidence of the renewal of each of the Policies together with receipts for or other evidence of the payment of the Insurance Premiums reasonably satisfactory to Beneficiary. If Trustor does not furnish such evidence and receipts at least thirty (30) days prior to the expiration of any expiring Policy, Beneficiary may, but shall not be obligated to, procure such insurance and pay the Insurance Premiums therefor. Trustor shall reimburse Beneficiary for the cost of such Insurance Premiums promptly on demand, together with interest thereon at the Default Rate from the date such amounts were paid by Beneficiary until the date such amounts area reimbursed to Beneficiary. Such amounts shall be added to the Secured Obligations hereunder. Trustor shall deliver to Beneficiary an Accord certificate evidencing each such Policy within two (2) days after its effective date and a copy of each such Policy within fifteen (15) days of its effective date.

(c)    If the event of any damage or destruction to all or any part of the Improvements by fire, flood, earthquake, or other casualty (a "**Casualty**"), Trustor shall give prompt notice thereof to Beneficiary. Following the occurrence of a Casualty, Trustor, regardless of whether insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the Improvements in accordance with all Legal Requirements to be of at least equal value and of substantially the same character as prior to such damage or destruction. If a Casualty

9

covered by any of the Policies (an **"Insured Casualty"**) occurs where the loss does not exceed $15,000, provided no Default or Event of Default has occurred and is continuing, Trustor may settle and adjust any claim without the prior consent of Beneficiary; provided such adjustment is carried out in a competent and timely manner, and Trustor is hereby authorized to collect and receipt for the insurance proceeds (the **"Proceeds"**). In the event of an Insured Casualty where the loss equals or exceeds $15,000 (a **"Significant Casualty"**), Beneficiary may, in its sole discretion, settle and adjust any claim without the consent of Trustor and agree with the insurer(s) on the amount to be paid on the loss, and the Proceeds shall be due and payable solely to Beneficiary and held by Beneficiary in an insured third party construction control escrow account in the State of Nevada (the **"Restoration Account"**) and disbursed in accordance with the procedures set forth below. If Trustor or any party other than Beneficiary is a payee on any check representing Proceeds with respect to a Significant Casualty, Trustor shall immediately endorse, and cause all such third parties to endorse, such check payable to the order of Beneficiary. Trustor hereby irrevocably appoints Beneficiary as its attorney-in-fact, coupled with an interest, to endorse such check payable to the order of Beneficiary. The expenses incurred by Beneficiary in the settlement, adjustment and collection of the Proceeds shall become part of the Secured Obligations and shall be reimbursed by Trustor to Beneficiary upon demand.

(d)     Trustor shall promptly give Beneficiary notice of the actual or threatened commencement of any condemnation or eminent domain proceeding affecting the Real Property or Improvements (a **"Condemnation"**) and shall deliver to Beneficiary copies of any and all papers served in connection with such Condemnation. Beneficiary is hereby irrevocably appointed as Trustor's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any award or payment in respect of a Condemnation (an **"Award"**) and to make any compromise, adjustment or settlement in connection with such Condemnation. Notwithstanding any Condemnation (or any transfer made in lieu of or in anticipation of such Condemnation), Trustor shall continue to pay the Secured Obligations at the time and in the manner provided for in the Note, and the Secured Obligations shall not be reduced unless and until any Award shall have been actually received and applied by Beneficiary to expenses of collecting the Award and to discharge of the Secured Obligations. Following the occurrence of a Condemnation, Trustor, regardless of whether an Award is available, shall promptly proceed to restore, repair, replace or rebuild the Improvements in accordance with Legal Requirements to the extent practicable to be of at least equal value and of substantially the same character (and to have the same utility) as prior to such Condemnation. If the Real Property and Improvements are sold, through foreclosure or otherwise, prior to the receipt by Beneficiary of such Award, Beneficiary shall have the right to receive all or a portion of the Award sufficient to pay the Secured Obligations. Trustor shall cause any Award that is payable to Trustor to be paid directly to Beneficiary. Beneficiary shall hold such Award in the Restoration Account and disburse such Award in accordance with the terms hereof.

(e)     If an Insured Casualty or Condemnation occurs where (i) the loss is in an aggregate amount less than ten percent (10%) of the unredeemed principal amount under the Note, (ii) in the reasonable judgment of Beneficiary, the Improvements can be restored within the earliest to occur of (x) six (6) months from the date of the Insured Casualty or Condemnation, (y) six (6) months before the Maturity Date of the Note, and (z) the expiration of the rental or business interruption insurance with respect thereto, to the pre-existing condition and utility of the Improvements as existed immediately prior to such Insured Casualty or Condemnation and to an

10

economic unit not less valuable and not less useful than the same was immediately prior to the Insured Casualty or Condemnation, and after such restoration will adequately secure the Secured Obligations, and (iii) no Default or Event of Default shall have occurred and be then continuing, then the Proceeds or the Award, as the case may be (after reimbursement of any expenses incurred by Beneficiary), applied to reimburse Trustor for the cost of restoring, repairing, replacing or rebuilding the Property (the "**Restoration**"), in the manner set forth herein.  Trustor shall commence and diligently prosecute such Restoration.  Notwithstanding the foregoing, in no event shall Beneficiary be obligated to apply the Proceeds or Award to reimburse Trustor for the cost of Restoration unless, in addition to satisfaction of the foregoing conditions, both (x) Trustor shall pay (and if required by Beneficiary, Trustor shall deposit with Beneficiary in advance) all costs of such Restoration in excess of the net amount of the Proceeds or the Award to be made available pursuant to the terms hereof; and (y) Beneficiary shall have received evidence reasonably satisfactory to it that during the period of the Restoration, the Rents will be at least equal to the sum of the operating expenses and Debt Service, as reasonably determined by Beneficiary.

      (f)    Except as provided in Section 1.5(e) above, any Proceeds and/or Award may, at the option of Beneficiary in its discretion, be applied to the payment of (i) accrued but unpaid interest on the Note, (ii) the unredeemed principal amount of the Note (without payment of any redemption premium, unless an Event of Default then exists), and (iii) other charges applied to reimburse Trustor for the cost of any Restoration, in the manner set forth below.  If Trustor is entitled to reimbursement out of the Proceeds or an Award held by Beneficiary, such Proceeds or Award shall be disbursed from time to time from the Restoration Account upon Beneficiary being furnished with (i) evidence satisfactory to Beneficiary of the estimated cost of completion of the Restoration, (ii) a fixed price or guaranteed maximum cost construction contract for Restoration satisfactory to Beneficiary, (iii) prior to the commencement of Restoration, all immediately available funds in addition to the Proceeds or Award that in Beneficiary's judgment are required to complete the proposed Restoration, (iv) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey, permits, approvals, licenses and such other documents and items as Beneficiary may reasonably require and approve in Beneficiary's discretion, and (v) all plans and specifications and construction contracts for such Restoration, such plans and specifications and construction contracts to be approved by Beneficiary prior to commencement of any work.  The construction control escrow account holder shall be retained by Beneficiary, at Trustor's expense, to review and approve all requests for disbursements, which approval shall also be a condition precedent to any disbursement.  No payment made prior to the final completion of the Restoration shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than the Proceeds or Award shall be disbursed prior to disbursement of such Proceeds or Award; and at all times, the undisbursed balance of such Proceeds or Award remaining in the hands of Beneficiary, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Beneficiary by or on behalf of Trustor for that purpose, shall be at least sufficient in the reasonable judgment of Beneficiary to pay for the cost of completion of the Restoration, free and clear of all liens or claims for lien.  Provided no Default or Event of Default then exists, any surplus that remains out of the Proceeds held in the Restoration Account after payment of such costs of Restoration shall be paid to Trustor.

(g)    In order to secure the performance and discharge of Trustor's obligations under this Section 1.5, but not in lieu of such obligations, Trustor shall, upon a failure to pay or provide such insurance, at the times and in the manner required herein, pay over to Beneficiary an amount equal to one-twelfth (1/12th) of the next maturing annual insurance premiums for each month that has elapsed since the last date to which such premiums were paid; and pay over to Beneficiary, on the first day of each month, sufficient funds (as estimated from time to time) to permit Beneficiary to pay said premiums when due.  Such deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Beneficiary, and no interest shall be payable in respect thereof except as required by law.  Upon demand by Beneficiary, Trustor shall deliver to Beneficiary such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable Beneficiary to pay such premiums when due.

## 1.6    Care of Trust Estate.

(a)    Trustor shall preserve and maintain the Trust Estate in good condition and repair, reasonable wear and tear excepted.  Trustor shall not permit, commit or suffer to exist any waste, impairment or deterioration of the Trust Estate or of any part thereof that in any manner materially impairs Beneficiary's security hereunder or the value of the Trust Estate, and Trustor shall not take (nor permit any of its agents to take) any action which will increase the risk of fire or other hazard to the Trust Estate as a whole or to any material part thereof.  Trustor shall comply with all of its obligations under any declaration of covenants, conditions and restrictions, reciprocal easement agreements, and the like encumbering the Real Property.

(b)    No part of the Improvements shall be removed, demolished or materially altered without the prior written consent of Beneficiary, which consent shall not be unreasonably withheld, if such removal, demolition or alteration would reasonably be expected to result in a material adverse effect on the Trustor's obligations hereunder or under the Note or the value of the Trust Estate.  Trustor shall have the right, without such consent, to remove and dispose of free from the lien of this Deed of Trust any part of the Improvements as from time to time may become worn out or obsolete, provided that either (1) such removal or disposition does not materially and adversely affect the value of the Trust Estate, or (ii) prior to or promptly following such removal, any such property shall be replaced with other property of substantially equal or better utility and of a value at least substantially equal to that of the replaced property when first acquired and free from any security interest of any other person, and by such removal and replacement Trustor shall be deemed to have subjected such replacement property to the lien of this Deed of Trust.  Trustor shall not materially change the nature or use of the Trust Estate without the prior written consent of Beneficiary.

## 1.7    Environmental Obligations.

(a)    Trustor shall exercise due diligence in order to comply with any and all Environmental Laws in all material respects regarding the presence or removal of Hazardous Materials on, in or about the Trust Estate, shall pay immediately, when due, the costs of removal from the Trust Estate and disposal of any Hazardous Materials which is required to be removed pursuant to any Environmental Laws and shall keep the Trust Estate free of any lien which may arise pursuant to any such Environmental Laws.  Trustor shall not, and shall use its reasonable efforts to not permit any person or entity to, release, discharge, or dispose of any Hazardous

12

Materials on the Real Property except in material compliance with all Environmental Laws and, if the same shall exist, Trustor shall immediately remove or cause to be removed from the Real Property such Hazardous Material to the extent required to be removed pursuant to any Environmental Laws.

(b)    Trustor hereby agrees to indemnify, hold harmless and defend (by counsel of Beneficiary's choice) Beneficiary and its directors, officers, partners, employees, agents, successors and assigns from and against any and all claims, losses, damages, demands, liabilities, fines, penalties, assessments, charges, administrative and judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith (including but not limited to reasonable attorneys' and consultants' fees and expenses), arising directly or indirectly, in whole or in part, out of (i) the presence on, in, about or under the Trust Estate (including, but not limited to, the surrounding streets and sidewalks) of any Hazardous Materials or any release of any Hazardous Materials on, in, about, under or from the Real Property, or (ii) any activity carried on or undertaken on or off the Real Property, whether by Trustor or any employees, agents, contractors or subcontractors of Trustor or any third persons occupying or present on the Real Property, in connection with the use, holding, handling, treatment, removal, storage, decontamination, cleanup, transport, release, generation, processing or abatement of any Hazardous Materials located or present in, on, about or under the Trust Estate (including, but not limited to, the surrounding streets and sidewalks). The foregoing indemnity shall further apply to any residual contamination in, on, about or under the Trust Estate (including, but not limited to, the surrounding streets and sidewalks), or affecting any natural resources, and to any contamination of any property or natural resources arising in connection with the generation, use, holding, handling, treatment, removal, decontamination, cleanup, storage, transport, release, processing or abatement of any such Hazardous Materials, and irrespective of whether any of such activities are undertaken in accordance with applicable Environmental Laws, but shall not include, with respect to any particular indemnitee and loss, that portion, if any, of that loss which was caused by the gross negligence or willful misconduct of that indemnitee. Trustor hereby acknowledges and agrees that the obligations of Trustor under this Section 1.7(b) shall be unlimited personal obligations of Trustor, shall not be secured by this Deed of Trust and shall survive any foreclosure under this Deed of Trust, any transfer in lieu thereof, and any satisfaction of the Secured Obligations.

    **1.8**    <u>Leases</u>.

(a)    Trustor represents and warrants that:

(i)    Trustor has delivered to Beneficiary true, correct and complete copies of the Leases, including all amendments and modifications, written or oral existing as of the date hereof, if any;

(ii)    Trustor has performed, and shall perform and observe, in all material respects all terms, covenants and conditions that Trustor must perform and observe under the Leases, and do everything necessary to preserve and to keep unimpaired Trustor's rights under the Leases to the extent the failure to do so would materially impair the Trustor's obligations hereunder or under the Note.

(iii)    except for the assignment effected hereby, Trustor has not executed any assignment or pledge of any of Leases, the Rents, or of Trustor's right, title and interest in the same; and

(iv)    this Deed of Trust conforms and complies with all Leases, the execution, delivery and recordation of this Deed of Trust does not constitute a violation or default under any Lease, is and shall at all times constitute a valid lien on Trustor's interests in the Leases.

**1.9    Further Encumbrance; Transfers.**

(a)    At all times prior to the discharge of the Secured Obligations, Trustor shall neither make nor suffer to exist, nor enter into any agreement for, any sale, assignment, exchange, mortgage, transfer, lien, hypothecation or encumbrance of all or any part of the Trust Estate, except pursuant to the Leases and transfers, liens and encumbrances that do not materially affect the value of the Trust Estate, each of which shall be deemed to be a "transfer" hereunder. As used herein, "transfer" includes the actual transfer or other disposition, including any sale, gifting, or other conveyance, or entering into any land sales contract or contract for deed, whether voluntary or involuntary, by law, or otherwise. A "transfer" shall also include any change of fifty-one percent (51%) or more, in the aggregate, of the beneficial ownership of any entity that is a Trustor under this Deed of Trust. Except Trustor shall have the right to transfer the Real Property or other assets of the trust estate to an irrevocable trust, subject to the terms and conditions of this Deed of Trust, the Promissory Note and any other Security Agreements evidencing this obligation.

(b)    In the event the ownership of the Trust Estate or any material part thereof becomes vested in a Person other than Trustor, or upon any transfer that is not permitted hereunder, Beneficiary may, without notice to Trustor, deal in any way with such successor or successors in interest with reference to this Deed of Trust and other Secured Obligations without in any way vitiating or discharging Trustor's or any guarantor's, surety's or endorser's liability hereunder or upon the obligations hereby secured. No sale of the Trust Estate and no forbearance to any person with respect to this Deed of Trust and no extension to any person of the time for payment of the Note, and other sums hereby secured given by Beneficiary shall operate to release, discharge, modify, change or affect the original liability of Trustor, or such guarantor, surety or endorser either in whole or in part.

**1.10    Further Assurances.**

(a)    At its sole cost and without expense to Trustee or Beneficiary, Trustor shall do, execute, acknowledge and deliver any and all such further acts, deeds, conveyances, notices, requests for notices, authorizations to file financing statements and continuation statements, certificates, assignments, notices of assignments, agreements, instruments and further assurances, and shall mark any chattel paper, deliver any chattel paper or instruments to Beneficiary and take any other actions that are reasonably necessary, prudent, or requested by Beneficiary or Trustee to perfect or continue the perfection and first priority of Beneficiary's security interest in the Trust Estate, to protect the Trust Estate against the rights, claims, or interests of third persons or to effect the purposes of this Deed of Trust, including the security agreement and the absolute assignment of Rents contained herein, or for the filing, registering or recording thereof.

14

(b)    Trustor shall forthwith upon the execution and delivery of this Deed of Trust, and thereafter from time to time upon the reasonable request of the Trustee or the Beneficiary, cause this Deed of Trust and each instrument of further assurance to be filed, indexed, registered, recorded, given or delivered in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien hereof upon, and the title of Trustee and/or Beneficiary to, the Trust Estate.

**1.11    Assignment of Rents.**   The assignment of Leases and Rents set out above in Granting Clause (F) shall constitute an absolute and present assignment to Beneficiary, subject to the permission herein given to Trustor to collect the Rents, and shall be fully operative without any further action on the part of any party, and specifically Beneficiary shall be entitled upon the occurrence and during the continuance of an Event of Default hereunder (written notice of which has been provided by the Beneficiary to the Trustor) to all Rents, whether or not Beneficiary takes possession of the Trust Estate, or any portion thereof.   The absolute assignment contained in Granting Clause (F) shall not be deemed to impose upon Beneficiary any of the obligations or duties of Trustor provided in any such Lease (including, without limitation, any liability under the covenant of quiet enjoyment contained in any lease in the event that any lessee shall have been joined as a party defendant in any action to foreclose this Deed of Trust and shall have been barred and foreclosed thereby of all right, title and interest and equity of redemption in the Trust Estate or any part thereof).

**1.12    Expenses.**

(a)    Trustor shall pay when due and payable all reasonable costs, including without limitation, those reasonable appraisal fees, recording fees, taxes, abstract fees, title policy fees, escrow fees, attorneys' and paralegal fees, travel expenses, fees for inspecting architect(s) and engineer(s) and all other reasonable costs and expenses which have been incurred or which may hereafter be incurred by Beneficiary or any assignee of Beneficiary in connection with the preparation and execution of this Deed of Trust, amendments thereto or instruments, agreements or documents of further assurance, and the enforcement of the Note and this Deed of Trust. Trustor shall, upon demand by Beneficiary, reimburse Beneficiary or any assignee of Beneficiary for all such reasonable expenses described herein which it incurs.

(b)    Trustor shall indemnify Beneficiary with respect to any transaction or matter in any way connected with any portion of the Trust Estate, this Deed of Trust, including any occurrence at, in, on, upon or about the Trust Estate (including any personal injury, loss of life, or property damage), or Trustor's use, occupancy, or operation of the Trust Estate, or the filing or enforcement of any mechanic's lien, or otherwise caused in whole or in part by any act, omission or negligence occurring on or at the Trust Estate, including failure to comply with any Legal Requirement or with any requirement of this Deed of Trust be paid or performed by Trustor, unless caused by the gross negligence or willful misconduct of Beneficiary.  If Beneficiary is a party to any litigation as to which either Trustor is required to indemnify Beneficiary (or is made a defendant in any action of any kind against Trustor or relating directly or indirectly to any portion of the Trust Estate) then, at Beneficiary's option, Trustor shall undertake Beneficiary's defense, using counsel reasonably satisfactory to Beneficiary (and any settlement shall be subject to Beneficiary's consent), and in any case shall indemnify Beneficiary against such litigation. Trustor shall pay all reasonable costs and expenses, including reasonable legal costs, which Beneficiary

15

pays or incurs in connection with any such litigation. Any amount payable under any indemnity in this Deed of Trust shall be a demand obligation, shall be added to, and become a part of, the secured obligations under this Deed of Trust, shall be secured by this Deed of Trust, and shall bear interest at the Default Rate. Such indemnity shall survive any release of this Deed of Trust and any foreclosure.

1.13  **Beneficiary's Cure of Trustor's Default.** If Trustor defaults in the payment of any tax, assessment, lien, encumbrance or other Imposition, in its obligation to furnish insurance hereunder, or in the performance or observance of any other covenant, condition or term of this Deed of Trust or the Note and such default would reasonably be expected to result in a material adverse effect on the value of the Trust Estate, Beneficiary may, but is not obligated to, to preserve its interest in the Trust Estate, upon 15 days prior written notice to the Trustor, perform or observe the same, and all payments made (whether such payments are regular or accelerated payments) and reasonable costs and expenses incurred or paid by Beneficiary in connection therewith shall become due and payable immediately. The amounts so incurred or paid by Beneficiary, together with interest thereon as provided above, shall be added to the Secured Obligations. Beneficiary is hereby empowered to enter and to authorize others to enter upon the Real Property or any part thereof for the purpose of performing or observing any such defaulted covenant, condition or term, without thereby becoming liable to Trustor or any person in possession holding under Trustor. No exercise of any rights under this section by Beneficiary shall cure or waive any Event of Default or notice of default hereunder or invalidate any act done pursuant hereto or to any such notice, but shall be cumulative of all other rights and remedies.

1.14  **Use of Trust Estate.** Trustor shall at all times use and operate (or cause its duly authorized lessees under any Lease to use or operate) the Trust Estate in a manner consistent with its current use and operation as non-owner occupied, investment residential property. Trustor shall not permit the Trust Estate to be used for any other purpose.

1.15  **Defense of Actions.** Trustor shall appear in and defend any action or proceeding affecting or purporting to affect the security of this Deed of Trust or the rights or powers of Beneficiary or Trustee, and shall pay all costs and expenses, including cost of title search and insurance or other evidence of title, preparation of survey, and reasonable attorneys' fees in any such action or proceeding in which Beneficiary or Trustee may appear or may be joined as a party and in any suit brought by Beneficiary based upon or in connection with this Deed of Trust or the Note. Nothing contained in this section shall, however, limit the right of Beneficiary to appear in such action or proceeding with counsel of its own choice, either on its own behalf or on behalf of Trustor.

## ARTICLE TWO

## INCORPORATION OF NOTE PROVISIONS

2.1  **Interaction with Note.** All terms, covenants, conditions, provisions and requirements of the Note are incorporated by reference in this Deed of Trust.

16

## ARTICLE THREE

## DEFAULTS AND REMEDIES

**4.1     Event of Default.**  The term **"Event of Default"** wherever used in this Deed of Trust shall mean (a) any one or more of the events of default as set forth in the Note or in the Loan Agreement; (b) any failure of Trustor to pay any of its monetary payment obligations under the Note, the Loan Agreement, or this Deed of Trust as and when due; (c) any failure of Trustor to perform any of its non-monetary obligations under the Note, the Loan Agreement, or this Deed of Trust if such failure is not cured by Trustor within fifteen (15) days after written notice from Beneficiary (or, if a cure is not possible within said fifteen (15) days, if Trustor fails to commence a cure within said time period and to diligently thereafter prosecute such cure to completion, in a period of time not to exceed, in any case, thirty (30) days from the date of delivery of such notice); (d) any transfer in violation of Section 1.9 of this Deed of Trust; (e) any default by the guarantor under any guaranty of the Note or all or any part of the Secured Obligations given in favor of Beneficiary; or (f) the death or permanent incapacity of Trustor or any natural person who is a guarantor under any such guaranty; (g) the debtor reasonable believes that it will not be able satisfy the amounts due under the Note, or (h) Borrower is in any defaulted, terminated, suspense, or revoked status for more than 30 days with the secretary of state, or (i) Lender makes any protective advance.

**4.2     Acceleration of Maturity.**  If an Event of Default occurs, Beneficiary may (except that such acceleration shall be automatic if the Event of Default is caused by Trustor's Bankruptcy), subject to applicable laws, accelerate the time for payment and performance and declare the entire unredeemed principal amount of the Note to be immediately due and payable, and upon such declaration such unredeemed principal amount and all interest and other sums due or payable pursuant to the Note shall immediately become due and payable without demand, presentment, notice or other requirements of any kind (all of which Trustor waives) notwithstanding anything in this Deed of Trust to the contrary.

**4.3     Protective Advances.**  If Trustor fails to make any payment or perform any other obligation under this Deed of Trust, then without thereby limiting Beneficiary's other rights or remedies, waiving or releasing any of Trustor's obligations, or imposing any obligation on Beneficiary, Beneficiary may either advance any amount owing or perform any or all actions that Beneficiary considers necessary or appropriate to cure such default.  All such advances shall constitute **"Protective Advances."** No sums advanced or performance rendered by Beneficiary shall cure, or be deemed a waiver of any Event of Default.  The amount of each Protective Advance shall be added to, and become a part of, the secured obligations under this Deed of Trust, shall be secured by this Deed of Trust, or be secured by any assignment of any senior lienholder, and shall bear interest at the Default Rate.

**4.4     Beneficiary's Power of Enforcement.**

(a)     If an Event of Default occurs, Beneficiary shall be entitled, at its option and in its sole and absolute discretion, to prepare and record, or to deliver to Trustee instructions for Trustee to prepare and record, a written notice of breach or default and election to sell, or any other declaration of default and demand for sale or notice or other statutory notice) to cause the Trust

17

Estate to be sold to satisfy the obligations hereof, and in the case of delivery to Trustee, Trustee shall cause said notice to be filed for record.

(b)    After the lapse of such time as may then be required by law following the recordation of said notice of breach or default and election to sell, and notice of sale having been given as then required by law, Trustee without demand on Trustor, shall sell the Trust Estate or any portion thereof at the time and place fixed by it in said notice, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder, of cash in lawful money of the United States payable at the time of sale. Without limiting the generality of anything set forth in this Deed of Trust, the parcels constituting the Real Property may be sold in one or more separate foreclosure sales and if the sale of fewer than all of such parcels does not provided sufficient net proceeds to Beneficiary to pay in full the Secured Obligations then due and payable to Beneficiary at such time, the unsold parcels shall remain subject to this Deed of Trust as security for the unsatisfied Secured Obligations. Trustee may, for any cause it deems expedient, postpone the sale of all or any portion of said property until it shall be completed and, in every case, notice of postponement shall be given by public announcement thereof at the time and place last appointed for the sale and from time to time thereafter Trustee may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall execute and deliver to the purchaser its Deed, Bill of Sale, or other instrument conveying said property sold, but without any covenant or warranty, express or implied. The recitals in such instrument of conveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Beneficiary, may bid at the sale.

(c)    After deducting all costs, fees and expenses of Trustee and of this Deed of Trust, including, without limitation, costs of evidence of title and reasonable attorneys' fees of Trustee or Beneficiary in connection with a sale, Trustee shall apply the proceeds of such sale to payment of all sums expended under the terms hereof, with accrued interest at the interest rate on the Note then to the payment of all other sums then secured hereby and the remainder, if any, to the person or persons legally entitled thereto as provided under Nevada law.

(d)    If any Event of Default occurs, Beneficiary may, either with or without entry or taking possession of the Trust Estate, and without regard to whether or not the indebtedness and other sums secured hereby shall be due and without prejudice to the right of Beneficiary thereafter to bring an action or proceeding to foreclose or any other action for any default existing at the time such earlier action was commenced, proceed by any appropriate action or proceeding: (1) to enforce payment of the Note, to the extent permitted by law, or the performance of any term hereof or any other right; (2) to foreclose this Deed of Trust in any manner provided by law for the foreclosure of mortgages or deeds of trust on real property and to sell, as an entirety or in separate lots or parcels, the Trust Estate or any portion thereof pursuant to the laws of the State of Nevada or under the judgment or decree of a court or courts of competent jurisdiction, and Beneficiary shall be entitled to recover in any such proceeding all costs and expenses incident thereto, including reasonable attorneys' fees in such amount as shall be awarded by the court; (3) to exercise any or all of the rights and remedies available to it under the Note; and (4) to pursue any other remedy available to it. Beneficiary shall take action either by such proceedings or by the exercise of its powers with respect to entry or taking possession, or both, as Beneficiary may determine.

18

(e)    The remedies described in this Section 3.4 may be exercised with respect to all or any portion of the Personal Property, either simultaneously with the sale of any real property encumbered hereby or independent thereof. Beneficiary shall at any time be permitted to proceed with respect to all or any portion of the Personal Property in any manner permitted by the UCC and Section 3.17. Trustor agrees that Beneficiary's inclusion of all or any portion of the Personal Property in a sale or other remedy exercised with respect to the real property encumbered hereby, as permitted by the UCC, is a commercially reasonable disposition of such property.

### 4.5    Beneficiary's Right of Entry.

(a)    If an Event of Default occurs: (i) Trustor, upon demand of Beneficiary, shall forthwith surrender to Beneficiary the actual possession and, if and to the extent permitted by law, Beneficiary itself, or by such officers or agents as it may appoint, may enter and take possession of all the Trust Estate including the Personal Property, without liability for trespass, damages or otherwise, and may exclude Trustor and its agents and employees wholly therefrom and may have joint access with Trustor to the books, papers and accounts of Trustor; and (ii) Trustor shall pay monthly in advance to Beneficiary on Beneficiary's entry into possession, or to any Receiver appointed to collect the Rents, all Rents then due and payable.

(b)    If Trustor shall for any reason fail to surrender or deliver the Trust Estate, the Personal Property or any part thereof after Beneficiary's demand, Beneficiary may obtain a judgment or decree conferring on Beneficiary or Trustee the right to immediate possession or requiring Trustor to deliver immediate possession of all or part of such property to Beneficiary or Trustee and Trustor hereby specifically consents to the entry of such judgment or decree. Trustor shall pay to Beneficiary or Trustee, upon demand, all costs and expenses of obtaining such judgment or decree and reasonable compensation to Beneficiary or Trustee, their attorneys and agents, and all such costs, expenses and compensation shall, until paid, be secured by the lien of this Deed of Trust.

(c)    Upon every such entering upon or taking of possession, Beneficiary or Trustee may hold, store, use, operate, manage and control the Trust Estate and conduct the business thereof, and, from time to time in its sole and absolute discretion and without being under any duty to so act:

(1)    make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property;

(2)    insure or keep the Trust Estate insured;

(3)    manage and operate the Trust Estate and exercise all the rights and powers of Trustor in their name or otherwise with respect to the same;

(4)    enter into agreements with others to exercise the powers herein granted Beneficiary or Trustee, all as Beneficiary or Trustee from time to time may determine; and, subject to the absolute assignment of the Leases and Rents to Beneficiary, Beneficiary or Trustee may collect and receive all the Rents, including those past due as well as those accruing thereafter; and shall apply the monies so received by Beneficiary or Trustee in such priority as

19

Beneficiary may determine to (i) the payment of interest and principal due and payable on the Note, (ii) the deposits for taxes and assessments and insurance premiums due, (iii) the cost of insurance, taxes, assessments and other proper charges upon the Trust Estate or any part thereof; (iv) the compensation, expenses and disbursements of the agents, attorneys and other representatives of Beneficiary or Trustee; and (v) any other charges or costs required to be paid by Trustor under the terms hereof; and

     (5) rent or sublet the Trust Estate or any portion thereof for any purpose permitted by this Deed of Trust.

  Beneficiary or Trustee shall surrender possession of the Trust Estate and the Personal Property to Trustor only when all that is due upon such interest and principal, tax and insurance deposits, and all amounts under any of the terms of the Note or this Deed of Trust, shall have been paid and all defaults made good. The same right of taking possession, however, shall exist if any subsequent Event of Default shall occur and be continuing.

  **4.6** **Leases.** Beneficiary is authorized to foreclose this Deed of Trust subject to the rights of any tenants of the Trust Estate, and the failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights shall not be, nor be asserted by Trustor to be, a defense to any proceedings instituted by Beneficiary to collect the sums secured hereby or to collect any deficiency remaining unpaid after the foreclosure sale of the Trust Estate, or any portion thereof. Unless otherwise agreed by Beneficiary in writing, all Leases executed subsequent to the date hereof (other than Leases in substantially the form as Leases of the Trust Estate, or any part thereof, in effect as of the date hereof) shall be subordinate and inferior to the lien of this Deed of Trust; provided, however, that (i) Beneficiary shall at Trustor's request execute a non-disturbance and attornment agreement in connection with applicable lease transactions; and (ii) from time to time Beneficiary may execute and record among the land records of the jurisdiction where this Deed of Trust is recorded, subordination statements with respect to such of said Leases as Beneficiary may designate in its sole discretion, whereby the Leases so designated by Beneficiary shall be made superior to the lien of this Deed of Trust for the term set forth in such subordination statement. From and after the recordation of such subordination statements, and for the respective periods as may be set forth therein, the Leases therein referred to shall be superior to the lien of this Deed of Trust and shall not be affected by any foreclosure hereof. All such Leases shall contain a provision to the effect that the Trustor and Space Lessee recognize the right of Beneficiary to elect and to effect such subordination of this Deed of Trust and consents thereto.

  **4.7** **Purchase by Beneficiary.** Upon any foreclosure sale (whether judicial or non-judicial) conducted in accordance with applicable Legal Requirements, Beneficiary may bid for and purchase the property subject to such sale, including by credit bid of the amount of the Secured Obligations due and payable to Beneficiary by Trustor at such time, and, upon compliance with the terms of sale, may hold, retain and possess and dispose of such property in its own absolute right without further accountability.

  **4.8** **Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws.** Trustor agrees to the full extent permitted by law that if an Event of Default occurs and is continuing (written notice of which has been given to the Trustor), neither Trustor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any

appraisement, valuation, stay, extension or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed of Trust or the absolute sale of the Trust Estate or any portion thereof or the final and absolute putting into possession thereto immediately after such sale, of the purchasers thereof, and Trustor for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprising the Trust Estate marshaled upon any foreclosure of the lien hereof and agrees that Trustee or any court having jurisdiction to foreclose such lien may sell the Trust Estate in part or as an entirety.

**4.9    Receiver.** If an Event of Default occurs and is continuing (written notice of which has been given to the Trustor), Beneficiary, without regard to the value, adequacy or occupancy of the security for the indebtedness and other sums secured hereby, shall be entitled as a matter of right if it so elects to the appointment of a Receiver to enter upon and take possession of the Trust Estate and to collect all Rents and apply the same as the court may direct, and such Receiver may be appointed by any court of competent jurisdiction upon application by Beneficiary. Beneficiary may have a Receiver appointed and shall promptly notify Trustor of such appointment of a Receiver, and Beneficiary may waive any requirement that the Receiver post a bond; provided, however, that failure to notify Trustor or any other third party shall not affect the enforceability of any actions taken by the Receiver. Beneficiary shall have the power to designate and select the Person who shall serve as the Receiver and to negotiate all terms and conditions under which such receiver shall serve. Any Receiver appointed on Beneficiary's behalf may be an affiliate of Beneficiary. All costs and expenses, including Receiver's fees, attorneys' fees, costs and agents compensation, incurred pursuant to the powers herein contained shall be added to the principal amount payable under the Note by Trustor, as part of the Secured Obligations, and secured by this Deed of Trust. The right to enter and take possession of and to manage and operate the Trust Estate and to collect all Rents, whether by a Receiver or otherwise, shall be cumulative to any other right or remedy available to Beneficiary under this Deed of Trust and the Note or otherwise available to Beneficiary and may be exercised concurrently therewith or independently thereof Beneficiary shall be liable to account only for such Rents (including, without limitation, security deposits) actually received by Beneficiary, whether received pursuant to this section or any other provision hereof. Notwithstanding the appointment of any Receiver or other receiver or custodian, Beneficiary shall be entitled as pledgee to the possession and control of any cash, deposits, or instruments at the time held by, or payable or deliverable under the terms of this Deed of Trust to, Beneficiary.

**4.10    Suits to Protect the Trust Estate.** Upon the occurrence and during the continuance of an Event of Default (written notice of which has been given by the Beneficiary to the Trustor), Beneficiary shall have the power and authority to institute and maintain any suits and proceedings as Beneficiary, in its sole and absolute discretion, may deem advisable (a) to prevent any impairment of the Trust Estate by any acts which may be unlawful or any violation of this Deed of Trust, (b) to preserve or protect its interest in the Trust Estate, or (c) to restrain the enforcement of or compliance with any legislation or other Legal Requirement that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Beneficiary's interest.

**4.11    Proofs of Claim.** In the case of any receivership, Bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceedings affecting Trustor, or any

guarantor, co-maker or endorser of any of Trustor's obligations, its creditors or its property, Beneficiary, to the extent permitted by law, shall be entitled to file such proofs of claim or other documents as it may deem to be necessary or advisable in order to have its claims allowed in such proceedings for the entire amount due and payable by Trustor under the Note and this Deed of Trust, at the date of the institution of such proceedings, and for any additional amounts which may become due and payable by Trustor after such date.

**4.12    Trustor to Pay on Any Default in Payment; Application of Monies by Beneficiary.**

(a)    In case of a foreclosure sale of all or any part of the Trust Estate and of the application of the proceeds of sale to the payment of the sums secured hereby, Beneficiary shall be entitled to enforce payment from Trustor of any additional amounts then remaining due and unpaid and to recover judgment against Trustor for any portion thereof remaining unpaid, with interest at the Default Rate. Trustor hereby agrees to the extent permitted by law, that no recovery of any such judgment by Beneficiary or other action by Beneficiary and no attachment or levy of any execution upon any of the Trust Estate or any other property shall in any way affect the lien and security interest of this Deed of Trust upon the Trust Estate or any part thereof or any lien, rights, powers or remedies of Beneficiary hereunder, but such lien rights, powers and remedies shall continue unimpaired as before.

(b)    Any monies collected or received by Beneficiary under this Section 3.12 shall be first applied to the payment of compensation, expenses and disbursements of the agents, attorneys and other representatives of Beneficiary, and the balance remaining shall be applied to the payment of amounts due and unpaid under the Note, in each case, in accordance with the Note. The provisions of this Section 3.12 shall not be deemed to limit or otherwise modify the provisions of any guaranty of the Indebtedness governed by the Note.

**4.13    Delay or Omission; No Waiver.**  No delay or omission of Beneficiary to exercise any right, power or remedy upon any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to waive any such Event of Default or to constitute acquiescence therein. Every right, power and remedy given to Beneficiary whether contained herein or in the Note or otherwise available to Beneficiary may be exercised from time to time and as often as may be deemed expedient by Beneficiary.

**4.14    No Waiver of One Default to Affect Another.**  No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon. If Beneficiary: (a) grants forbearance or an extension of time for the payment of any sums secured hereby; (b) takes other or additional security for the payment thereof; (c) waives or does not exercise any right granted in this Deed of Trust or the Note; (d) releases any part of the Trust Estate from the lien or security interest of this Deed of Trust; (e) consents to the filing of any map, plat or replat of the Real Property; (f) consents to the granting of any easement on the Real Property; or (g) makes or consents to any agreement changing the terms of this Deed of Trust subordinating the lien or any charge hereof, no such act or omission shall release, discharge, modify, change or affect the original liability under the Note or this Deed of Trust or otherwise of Trustor, or any subsequent purchaser of the Trust Estate or any part thereof or any maker, co-signer, surety or guarantor. No such act or omission shall

22

preclude Beneficiary from exercising any right, power or privilege herein granted or intended to be granted in case of any Event of Default then existing or of any subsequent Event of Default, nor, except as otherwise expressly provided in an instrument or instruments executed by Beneficiary, shall the lien or security interest of this Deed of Trust be altered thereby, except to the extent expressly provided in any releases, maps, easements or subordinations described in clause (d), (e), (f) or (g) above of this Section 3.15. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Trust Estate, Beneficiary, without notice to any person, firm or corporation, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Trust Estate or the indebtedness secured hereby, or with reference to any of the terms or conditions hereof, as fully and to the same extent as it might deal with the original parties hereto without in any way releasing or discharging any of the liabilities or undertakings hereunder, or waiving its right to declare such sale or transfer an Event of Default as provided herein. Notwithstanding anything to the contrary contained in this Deed of Trust or the Note, (i) in the case of any non-monetary Event of Default, Beneficiary may continue to accept payments due hereunder without thereby waiving the existence of such or any other Event of Default and (ii) in the case of any monetary Event of Default, Beneficiary may accept partial payments of any sums due hereunder without thereby waiving the existence of such Event of Default if the partial payment is not sufficient to completely cure such Event of Default.

     **4.15**   <u>Discontinuance of Proceedings; Position of Parties Restored.</u>  If Beneficiary shall have proceeded to enforce any right or remedy under this Deed of Trust by foreclosure, entry of judgment or otherwise and such proceedings shall have been discontinued or abandoned for any reason, then and in every such case Trustor and Beneficiary shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Beneficiary shall continue as if no such proceedings had occurred or had been taken.

     **4.16**   <u>Remedies Cumulative.</u>  No right, power or remedy conferred upon or reserved to Beneficiary this Deed of Trust or the Note is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note, now or hereafter existing at law, in equity or by statute, and Beneficiary shall be entitled to resort to such rights, powers, remedies or security as Beneficiary shall in its sole and absolute discretion deem advisable. The rights and remedies of Beneficiary upon the occurrence of one or more defaults by Trustor may be exercised by Beneficiary, in the sole discretion of Beneficiary, either alternatively, concurrently, or consecutively in any order. The exercise by Beneficiary or Trustee, of any one or more of such rights and remedies shall not be construed to be an election of remedies nor a waiver of any other rights and remedies Beneficiary might have unless, and limited to the extent that, Beneficiary shall so elect or so waive by an instrument in writing delivered to Trustee. Without limiting the generality of the foregoing, to the extent that this Deed of Trust covers the real property and personal property, Beneficiary may, in the sole discretion of Beneficiary, either alternatively, concurrently, or consecutively in any order:

          (a)    Proceed as to both the real property, the personal property and other collateral in accordance with Beneficiary's rights and remedies in respect to the real property; or

          (b)    Proceed as to the real property in accordance with Beneficiary's rights and remedies in respect to the real property and proceed as to the personal property and other collateral

in accordance with Beneficiary's rights and remedies in respect to the personal property and other collateral;

Beneficiary may in the sole discretion of Beneficiary, appoint Trustee as the agent of Beneficiary for the purpose of disposition of the personal property and other collateral in accordance with the UCC. If Beneficiary should elect to proceed as to the personal property as well as any other collateral in accordance with Beneficiary's rights and remedies in respect to real property:

      (a)    All the real property and other collateral may be sold, in the manner and at the time and place provided in this Deed of Trust, in one lot, or in separate lots consisting of any combination or combinations of the real property, the personal property and other collateral, as the Beneficiary may elect, in the sole discretion of Beneficiary.

      (b)    Trustor acknowledges and agrees that a disposition of the personal property and other collateral in accordance with Beneficiary's rights and remedies in respect to real property, as hereinabove provided, is a commercially reasonable disposition of the collateral.

    **4.17**   **Foreclosure; Expenses of Litigation.**  If Trustee forecloses, reasonable attorneys' fees for services in the supervision of said foreclosure proceeding shall be allowed to the Trustee and Beneficiary as part of the foreclosure costs. In the event of foreclosure of the lien hereof, there shall be allowed and included as additional indebtedness all reasonable expenditures and expenses which may be paid or incurred by or on behalf of Beneficiary for attorneys' fees, appraiser's fees, outlays for documentary and expert evidence, stenographers' charges, publication costs, and costs (which may be estimated as to items to be expended after foreclosure sale or entry of the decree) of procuring all such abstracts of title, title searches and examinations, title insurance policies and guarantees, and similar data and assurances with respect to title as Beneficiary may deem reasonably advisable either to prosecute such suit or to evidence to a bidder at any sale which may be had pursuant to such decree the true condition of the title to or the value of the Trust Estate or any portion thereof. All expenditures and expenses of the nature in this section mentioned, and such expenses and fees as may be incurred in the protection of the Trust Estate and the maintenance of the lien and security interest of this Deed of Trust, including the fees of any attorney employed by Beneficiary in any litigation or proceeding affecting the Note or this Deed of Trust, the Trust Estate or any portion thereof, including, without limitation, civil, probate, appellate and bankruptcy proceedings, or in preparation for the commencement or defense of any proceeding or threatened suit or proceeding, shall be immediately due and payable by Trustor, with interest thereon at the Default Rate, shall be added to the amount of the Secured Obligations, and shall be secured by this Deed of Trust.

    **4.18**   **Deficiency Judgments.**  If after foreclosure of this Deed of Trust or Trustee's sale hereunder, there shall remain any deficiency with respect to any amounts payable under the Note or hereunder or any amounts secured hereby, and Beneficiary shall institute any proceedings to recover such deficiency or deficiencies, all such amounts shall continue to bear interest at the interest rate on the Note. In addition, Beneficiary and Trustee shall be entitled to recovery of all of their reasonable costs and expenditures (including without limitation any court imposed costs) in connection with such proceedings, including their reasonable attorneys' fees, appraisal fees and the other costs, fees and expenditures referred to in Section 3.18 above. This provision shall

survive any foreclosure or sale of the Trust Estate, any portion thereof and/or the extinguishment of the lien hereof.

**4.19  Waiver of Jury Trial.** TRUSTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS DEED OF TRUST OR THE NOTE, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY TRUSTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. BENEFICIARY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY TRUSTOR.

**4.20  Exculpation of Beneficiary.** The acceptance by Beneficiary of the assignment contained herein with all of the rights, powers, privileges and authority created hereby shall not, prior to entry upon and taking possession of the Trust Estate by Beneficiary, be deemed or construed to make Beneficiary a "mortgagee in possession;" nor thereafter or at any time or in any event obligate Beneficiary to appear in or defend any action or proceeding relating to the Leases, the Rents or the Trust Estate, or to take any action hereunder or to expend any money or incur any expenses or perform or discharge any obligation, duty or liability under any Lease or to assume any obligation or responsibility for any security deposits or other deposits except to the extent such deposits are actually received by Beneficiary, nor shall Beneficiary, prior to such entry and taking, be liable in any way for any injury or damage to person or property sustained by any Person in or about the Trust Estate.

## ARTICLE FOUR

### RIGHTS AND RESPONSIBILITIES OF TRUSTEE; OTHER PROVISIONS RELATING TO TRUSTEE

**5.1  Exercise of Remedies by Trustee.** To the extent that this Deed of Trust or applicable law authorizes or empowers Beneficiary to exercise any remedies set forth in Article 3 hereof or otherwise, or perform any acts in connection therewith, Trustee (but not to the exclusion of Beneficiary unless so required under the law of the State of Nevada) shall have the power to exercise any or all such remedies, and to perform any acts provided for in this Deed of Trust in connection therewith, all for the benefit of Beneficiary and on Beneficiary's behalf in accordance with applicable law of the State of Nevada. In connection therewith, Trustee:  (a) shall not exercise, or waive the exercise of, any Beneficiary's remedies (other than any rights of Trustee to any indemnity or reimbursement), except at Beneficiary's request, and (b) shall exercise, or waive the exercise of, any or all of Beneficiary's remedies at Beneficiary's request, and in accordance with Beneficiary's directions as to the manner of such exercise or waiver.

**5.2  Rights and Privileges of Trustee.** To the extent that this Deed of Trust requires Trustor to indemnify Beneficiary or reimburse Beneficiary for any expenditures Beneficiary may incur, Trustee shall be entitled to the same indemnity and the same rights to reimbursement of

expenses as Beneficiary, subject to such limitations and conditions as would apply in the case of Beneficiary. To the extent that this Deed of Trust negates or limits Beneficiary's liability as to any matter, Trustee shall be entitled to the same negation or limitation of liability. To the extent that Trustor, pursuant to this Deed of Trust, appoints Beneficiary as Trustor's attorney in fact for any purpose, Beneficiary or (when so instructed by Beneficiary) Trustee shall be entitled to act on Trustor's behalf without joinder or confirmation by the other.

5.3   **Resignation or Replacement of Trust**. Trustee may resign by an instrument in writing addressed to Beneficiary, and Trustee may be removed at any time with or without cause by an instrument in writing executed by Beneficiary. In case of the resignation, removal or disqualification of Trustee or if for any reason Beneficiary shall deem it desirable to appoint a substitute, successor or replacement Trustee to act instead of Trustee originally named (or in place of any substitute, successor or replacement Trustee), then Beneficiary shall have the right and is hereby authorized and empowered to appoint a successor, substitute or replacement Trustee, including itself, without any formality other than appointment and designation in writing executed by Beneficiary, which instrument shall be recorded if required by the law of the State of Nevada.

5.4   **Effect of Appointment of Successor Trustee**. Upon the appointment and designation of any successor, substitute or replacement Trustee, Trustee's entire estate and title in the Trust Estate shall vest in the designated successor, substitute or replacement Trustee. Such successor, substitute or replacement Trustee shall thereupon succeed to and shall hold, possess and execute all the rights, powers, privileges, immunities and duties herein conferred upon Trustee. All references, herein to Trustee shall be deemed to refer to Trustee (including any successor or substitute appointed and designated as herein provided) from time to time acting hereunder.

5.5   **Ratification**. Trustor hereby ratifies and confirms any and all acts that any Trustee may take or perform by virtue of, and in accordance with, this Deed of Trust.

5.6   **Exculpation**. Trustee shall not be liable for any error of judgment or act done by Trustee in good faith, or otherwise be responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, willful misconduct, bad faith or knowing violation of law. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by it hereunder, believed by it in good faith to be genuine. All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law). Trustee shall be under no liability for interest on any moneys received by it hereunder.

5.7   **Endorsement and Execution of Documents**. Upon Beneficiary's written request, Trustee shall, without liability to Trustor (but with notice to Trustor), execute, consent to, or join in any instrument or agreement in connection with or necessary to effectuate the purposes of this Deed of Trust. Trustor hereby irrevocably designates Trustee as its attorney in fact to execute, acknowledge and deliver, on Trustor's behalf and in Trustor's name, all instruments or agreements necessary to implement any provision(s) of this Deed of Trust, subject to the terms hereof, or to further perfect the lien created by this Deed of Trust on the Trust Estate. This power of attorney shall be deemed to be coupled with an interest and shall survive any disability of Trustor.

## ARTICLE FIVE

## MISCELLANEOUS PROVISIONS

**6.1    Heirs, Successors and Assigns Included in Parties.**  Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Deed of Trust, by or on behalf of Trustor or Beneficiary shall bind and inure to the benefit of its heirs, successors and assigns, whether so expressed or not.

**6.2    Construction; Interpretation.**  The headings of the articles, sections, paragraphs and subdivisions of this Deed of Trust are for convenience of reference only, are not to be considered a part hereof, and shall not limit or expand or otherwise affect any of the terms hereof. In this Deed of Trust, whenever the context so requires, the neuter includes the masculine and feminine, and the singular including the plural, and vice versa. As used in this Deed of Trust unless the context clearly requires otherwise:  The terms "herein" or "hereunder" and similar terms without reference to a particular section shall refer to this entire Deed of Trust and not just to the section in which such terms appear; the term "lien" shall also mean a security interest, and the term "security interest" shall also mean a lien.

**6.3    Invalid Provisions to Affect No Others.**  In the event that any of the covenants, agreements, terms or provisions contained herein or in the Note shall be invalid, illegal or unenforceable in any respect, the validity of the lien hereof and the remaining covenants, agreements, terms or provisions contained herein or in the Note shall be in no way affected, prejudiced or disturbed thereby.  To the extent permitted by law, Trustor waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.

**6.4    Estoppel Certificates.**  Within ten (10) days after Beneficiary's written request, Trustor shall from time to time, but no more than twice per any twelve (12) month period, execute a certificate, in recordable form (an **"Estoppel Certificate"**), stating, except to the extent it would be inaccurate to so state:  (a) the current amount of the Secured Obligations hereunder and all elements thereof, including principal, interest, and all other elements; (b) Trustor has no defense, offset, claim, counterclaim, right of recoupment, deduction, or reduction against any of the Secured Obligations hereunder; (c) neither this Deed of Trust nor the Note have been amended, whether orally or in writing; (d) Trustor has no claims against Beneficiary of any kind; (e) any Power of Attorney granted to Beneficiary is in full force and effect; and (f) such other matters relating to this Deed of Trust or the Note and the relationship of Trustor and Beneficiary as Beneficiary shall request.  In addition, the Estoppel Certificate shall set forth the reasons why it would be inaccurate to make any of the foregoing assurances ("a" through "f").

**6.5    Governing Law.**  This Deed of Trust shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of Nevada, without regard to conflicts of laws principles, except to the extent that applicable law provides that the validity or perfection of the security interest hereunder, or remedies hereunder, in respect of any particular collateral are governed by the laws of a jurisdiction other than the State of Nevada.

**6.6** **Required Notices.** Trustor shall notify Beneficiary promptly of the occurrence of any of the following and shall immediately provide Beneficiary a copy of the notice or documents referred to: (i) receipt of notice from any Governmental Authority relating to all or any material part of the Trust Estate if such notice relates to an Event of Default or act, omission or circumstance which would result in an Event of Default after notice or passage of time or both; (ii) receipt of any notice from any tenant leasing all or any material portion of the Trust Estate or responsible for any material portion of the aggregate periodic rent collected by Trustor under the Leases if such notice relates to a default or act, omission or circumstance which would result in a default after notice or passage of time or both under such Leases which would have a material adverse effect on the Trustor's business, finances or operations; (iii) the commencement of any proceedings or the entry of any judgment, decree or order materially affecting all or any portion of the Trust Estate or which involve the potential liability of Trustor in an amount in excess of Fifty Thousand Dollars ($50,000) (other than for personal injury actions and related property damage suits which have been acknowledged by the insurer to be covered by such insurance); or (iv) commencement of any judicial or administrative proceedings or the entry of any judgment, decree or order by or against or otherwise affecting Trustor, a material portion of the Trust Estate, or a material portion of the Personal Property, or any other action by any creditor or lessor thereof as a result of any default under the terms of any Lease.

**6.7** **Reconveyance.** Upon written request of Beneficiary certifying the payment in full of all of the Secured Obligations and upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

**6.8** **Attorneys' Fees.** Without limiting any other provision contained herein, Trustor agrees to pay all costs of Beneficiary or Trustee incurred in connection with the enforcement of this Deed of Trust or the taking of this Deed of Trust as security for the repayment of the Note, including without limitation, all reasonable attorneys' fees whether or not suit is commenced, and including, without limitation, fees incurred in connection with any probate, appellate, bankruptcy, deficiency or any other litigation proceedings, all of which sums shall be secured hereby.

**6.9** **Late Charges.** By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right to collect any late charge thereon or default interest thereon, if so provided in the Note or this Deed of Trust.

**6.10** **Right of Entry.** Beneficiary may at any reasonable time or times upon prior written notice make or cause to be made entry upon and inspections of the Trust Estate or any part thereof in person or by agent.

**6.11** **Corrections.** Trustor shall, upon request of Beneficiary, promptly correct any defect, error or omission which may be discovered in the contents of this Deed of Trust or in the execution or acknowledgement hereof, and shall execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Beneficiary to carry out more effectively the purposes of this Deed of Trust, to subject to the lien

and security interest hereby created any of Trustor's properties, rights or interest covered or intended to be covered hereby, and to perfect and maintain such lien and security interest.

      **6.12**   <u>Statute of Limitations</u>. To the fullest extent allowed by the law, the right to plead, use or assert any statute of limitations as a plea or defense or bar of any kind, or for any purpose, to any debt, demand or obligation secured or to be secured hereby, or to any complaint or other pleading or proceeding filed, instituted or maintained for the purpose of enforcing this Deed of Trust or any rights hereunder, is hereby waived by Trustor.

      **6.13**   <u>Time</u>. Time is of the essence of each and every term, covenant and condition hereof. Unless otherwise specified herein, any reference to "days" in this Deed of Trust shall be deemed to mean "calendar days."

      **6.14**   <u>Amendments</u>. This Deed of Trust cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought and only as permitted by the provisions of the Note.

      **IN WITNESS WHEREOF**, Trustor has executed this Deed of Trust, Assignment of Leases and Rents, the day and year first above written.

                      **Trustor**

 

                _____

                PAKUS, LLC by SHERRY RAHMAN
                Its Managing Member

                **ACKNOWLEDGMENT**

STATE OF NEVADA       }
                      } SS
COUNTY OF CLARK    }

      This instrument was acknowledged before me on _____ by
_____.

                                _____
                                NOTARY PUBLIC

## EXHIBIT A

### Legal Description

COMMONLY KNOWN AS 3984 ROYAL VIKING WAY, LAS VEGAS, NV 89121

APN: 162-13-415-008

LOT 8 OF ROYAL VIKING ESTATE, AS SHOWN BY MAP THEROF FILED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA IN BOOK 25, PAGE 86.